## J. O. CAMPBELL v. STATE.

No. A-3916.    Opinion Filed April 28, 1923.
(214 Pac. 738.)

(Syllabus.)

1.    **Appeal and Error—Conviction not Disturbed for Conflicting Evidence.** Conflicting issues of fact are for the sole determination of the jury. The conviction will not be disturbed on appeal because of sharp conflicts in the evidence, if the evidence adduced reasonably tends to support the verdict and judgment.

2. **Perjury—No Defense, that County Clerk Did, not Require Accused to Subscribe to Alleged False Affidavit Before Delivery of Marriage License.** In a prosecution for perjury for falsely swearing to the age of the girl in order to obtain a marriage license, the failure of the clerk to require the affiant to subscribe to the affidavit before the marriage license was delivered was an, irregularity which formed no defense to the prosecution. The material inquiries were: Was the proceeding one in which an oath may by law be administered? Did the party take an oath to testify, declare, depose, or certify truly before any competent tribunal, officer, or person? Did such person willfully and contrary to such oath state a material matter which he knew to be false? •

3. **Appeal and Error—Witnesses—Examination of Witnesses Largely Discretionary—Necessity for Prejudicial Error in Permitting Leading Questions.** . The scope and the manner of the examination of witnesses are matters that necessarily must be left largely to the discretion of the trial court. Where leading questions are permitted to be asked a witness, there must appear to have been an abuse of discretion by the trial court, resulting to the prejudice of the defendant.

4. **Instruction Approved.** Instructions examined and considered in relation to the issues presented, and held to fairly and fully cover the law of the case in a manner favorable to the defendant.

5. **Requested Instructions Properly Refused.** For reasons holding requested instructions properly refused see body of opinion.

Appeal from District Court, Caddo County; Will Linn, Judge.

J. O. Campbell was convicted of perjury, and he appeals. Affirmed.

### Statement of the Record.

This is an appeal from a judgment rendered in a cause filed in the district court of Caddo county, Okla., wherein the plaintiff in error was found guilty of the crime of perjury, in having sworn falsely to the age of a girl for the purpose of obtaining a marriage license, and upon conviction the plaintiff in error was sentenced to be confined in the penitentiary for a period of 9 months.

The charging part of the information is in the following words:

"Now, at the February, 1920, term of the district court at and within said county and state, and within the jurisdiction of said court, one J. O. Campbell, then and there being, did then and there commit the crime of perjury by then and there, intentionally, unlawfully, willfully, and feloniously, under oath then and there legally administered to him by Guy R. Gillette, being then and there authorized by law as court clerk to administer said oath, make the following voluntary and false statement, declaration, and affidavit in writing signed by him in the following words, to wit:

" 'Application for Marriage License.

" 'State of Oklahoma, Caddo County. County Court. I, J. O. Campbell, the undersigned, hereby apply for marriage license to be issued to Mr. J. O. Campbell, aged 49 years, whose residence is Oklahoma City, state of Oklahoma, and Miss Flora Francis, age 18 years, whose residence is Mountain View, state of Oklahoma, and for the purpose of procuring the same do solemnly swear that I have personal knowledge of the facts herein stated; that the names, ages, and places of residence of said parties are truly and correctly set out above; that neither of said parties are disqualified or incapable under the law of entering into the marriage relation, nor are they related to each other within the degrees prohibited by law; that I am 49 years of age and reside at Oklahoma City, 505 N. Lindsay Ave., county of Oklahoma, state of Oklahoma.

"J. O. Campbell, Applicant.

" 'Subscribed and sworn to before me this 8th day of December, 1919.

" '[Seal.]  Guy R. Gillette, Court Clerk.'

"And whereas in fact and in truth the said Flora Francis was not eighteen years of age, and there were legal objections to the marriage, the said Flora Francis being then only thirteen years of age, and that the said Flora Francis was disqualified and incapable under the law of entering into the marriage

relation and the said J. O. Campbell, knew the said statements so made in said affidavit to obtain said marriage license as aforesaid to be false and wholly false at the time he so made said statements and said facts being then and there material to the issuance of marriage license.''

To this information the plaintiff in error filed his demurrer, which was by the court overruled, whereupon he entered his plea of not guilty and proceeded to the trial of this cause, and during said trial noted numerous objections to the introduction of testimony, which were by the court overruled, and to which the plaintiff in error saved exceptions. At the conclusion of the testimony for the state, and after the state had rested, the plaintiff in error demurred to the evidence and moved the court to instruct the jury to return a verdict in favor of the defendant, which motion was by the court overruled, which ruling was excepted to, and, at the conclusion of the testimony, and after both sides had announced their case closed, the plaintiff in error again moved the court to instruct the jury to return a verdict in favor of the defendant, which motion was by the court overruled, to which ruling exception was taken, and thereupon plaintiff in error moved the court to instruct the jury as follows, to wit:

''Defendant's Requested Instruction No. 1—The court instructs the jury to return a verdict of not guilty and in favor of the defendant. No. 2.—The court instructs the jury that, unless the state proves beyond a reasonable doubt that the affidavit made by the defendant was false and was corruptly made by the defendant, with a knowledge on the part of the defendant of its falsity, their verdict should be not guilty.''

The giving of the said instructions so requested was by the court denied, to which ruling of the court the plaintiff in error noted his exception, and thereupon the court instructed the jury in 13 separate and distinct instructions to the giving

of all of which, save and except 12 and 13, the plaintiff in error saved an exception.

That upon the giving of these instructions, the cause was argued to the jury and the county attorney used the following language in his argument, and to the use of such language the plaintiff in error objected and noted his exception. The language follows:

"By Mr. Bristow: Perjury will lead innocent women and girls into houses of ill fame. I say again that the effect of perjury is to destroy your institutions; it is to destroy your home; it can destroy your life; and it can prostitute the morals of your women. That is what I say the effect of perjury is."

The jury, at the conclusion of the argument, retired to its room and returned a verdict finding the defendant guilty and fixing his punishment at confinement in the state penitentiary for a period of 9 months, and thereafter in due time the plaintiff in error filed his motion for a new trial, and thereafter the court overruled the same, to which ruling the plaintiff in error excepted, and after certain extensions duly and legally granted the plaintiff in error to prepare and serve his case-made, the said case-made was duly and regularly signed and settled and filed in this court within the statutory period, and is now regularly before this court for consideration.

### The Evidence.

In many particulars there is no conflict between the state's evidence and that on behalf of the defendant. According to the testimony of the state's witnesses, the defendant, his niece, and his sister-in-law, Mrs. Francis Campbell, and John McTee appeared at the courthouse in the city of Anadarko, the county seat of Caddo county, on the morning of the 8th day of December, 1919. They had driven from the town of Mountain View, Okla., in a service car operated by

McTee. They brought with them Flora Francis, the girl whom the defendant intended to marry. Upon arrival at the courthouse the defendant, J. O. Campbell, went into the office of the court clerk for the purpose of procuring the marriage license, leaving the other parties either in the hall of the courthouse or in another office. Defendant first made application to Miss Curry, the deputy court clerk, who filled out the blanks and then called in Mr. Gillette, the court clerk. Mr. Gillette told the defendant that he had received word that the girl was not of marriageable age and refused to issue the license, and, according to his testimony, advised Campbell that the best thing for him to do was to get the parent's consent to the girl's marriage; that Campbell went out and came back again and asked Gillette whether it would affect the girl if he said she was 18 years old, and Gillette says that he then told Campbell that it would affect everybody if he signed the affidavit, and that Campbell seemed to be uncertain about it, and Gillette then left him and came out of that office and went into another of his offices, which was upstairs. Gillette testified that later the defendant came in and said he was ready to swear the girl was 18 years of age, and Gillette testified that he then swore Campbell to the affidavit which appears in the information, but overlooked having Campbell sign such affidavit; that he then delivered the marriage license to Campbell and, soon discovering his oversight, he went out on the street and found Campbell and had him sign the affidavit to which he had already been sworn. The testimony on the part of the state further shows that Flora Francis, the girl named in the marriage license, was at that time 13 years of age; that she had, previous to the issuance of the marriage license, told Campbell she was only 13 years of age.

The evidence on the part of the defense is, in substance, that Campbell and the Francis girl agreed to get married; that the Francis girl was living with her father and step-mother,

near the town of Mountain View, Okla.; that the girl was dissatisfied with having to do all the work around the house, and had told Campbell of that fact, and that Campbell proposed that they get married, to which proposal the girl agreed, but that when Campbell suggested they speak to her father about it the girl demurred, stating that her father would not consent to her marriage, and that she wanted to get a home of her own, and that if she told her father about it he would not let her leave the house or let her go any place; that the girl told him she was 18 in March, 1919, and that he had no other information as to her age; that when she went to Anadarko to get married defendant inquired for the clerk's office and was directed to it; when he went in he saw a lady in there; that Flora Francis did not go in with him; that he asked for a marriage license; that the young lady clerk got out a book, asked his name and her name and the ages, and wrote them all down, and then went and called the clerk, Mr. Gillette, and Gillette directly came in and asked for their ages, and defendant told him the girl's age was 18 because the girl had told him she was 18 and she looked to be that age, and then Gillette told defendant that a phone message had been received that the girl was not of age; that defendant then asked him who it was, and Gillette said he did not know, and defendant then turned and went out into the hall where the rest of the party were, and defendant told them there was nothing doing, that a phone message had come that Flora was not of age, and thereupon they went back into the office where the lady was, and she gave them the applications, and they took them upstairs to the office where Mr. Gillette was; that Flora Francis went with him; whereupon the defendant testifies that the following occurred:

"Q. Did the girl come up with you? A. She came up with me; yes, sir. We went up there and told them we wanted the license, and he wanted to know if I would swear that, and

1 told him I would; she said she was 18, and I would swear to it. Q. Where was the girl? A. Standing right there by my side. Q. And what did he say to the girl? A. He said, 'How old are you, Flora?' She said, 'I was 18 last March.' Q. Was anything more said to you about an oath, or taking an oath than that? A. No, sir. Q. Repeat what he said now, so I can get it right, when he asked you her age? A. He didn't ask me nothing about it. Q. Didn't you say a while ago he asked you how old she was? A. Yes. Q. And what was it he said? A. He asked me how old she was, and she said, 'I, was eighteen last March.' Q. And what did he say to you about swearing to it? A. He wanted to know if I would swear to it, and I said I would, because she is 18. Q. And did he swear you? A. No, sir. Q. Is that all that was said about swearing? A. Yes, sir. Q. And what did he do then? A. He issued the license. Q. Now then, when was the first time you ever saw the affidavit that you see today? A. Down there—down the street a block and a half, something like that. Q. Did you have your marriage license then? A. Had it in my pocket. Q. How did you come to see that at that time? A. Which, that affidavit you are talking about? Q. Yes; that he had this morning? Jim, that is your signature (handing paper to witness)? A. Yes, sir; that is it. Q. Where did you sign that paper? A. Down the street at the hardware. Q. How did you come to sign it? A. We went right down the street there, and we was down there looking up the stairway. We thought there was a stairway there, and we thought there was a justice of peace, and we was standing there thinking of going up, and this fellow Gillette came up, and he motioned to us, and he said, 'Wait a minute,' and he had a paper for me to sign. We waited and he came up, and we stepped inside and borrowed a pen and ink from this hardware man and signed this paper. Q. Now, did Mr. Gillette read the paper to you? A. No, sir; he did not. Q. Has Mr. Gillette ever read that paper to you? A. No, sir; he did not. Q. Did he ever swear you to anything? A. No, sir; he did not. Q. Didn't swear you when you signed the paper? A. Did not.''

Thereafter Gillette directed them across the street to the office of the justice of the peace, where they were married, and

immediately after the marriage ceremony was pronounced and before the marriage certificate was signed and witnessed, defendant was arrested on this charge, and on cross-examination defendant testified in part as follows:

"Q. And then what did he first say about the girl's age to you? A. He asked how old she was. Q. What did you tell him? A. I told him she was 18; she said she was. Q. What is that? A. I told him she was 18, for she said she was. Q. You told him that in the first place, the first time? A. She said she was 18. Q. I am asking you if you told him that in the first place? A. Sure. Q. Because she said she was 18? A. Yes, sir. Q. And then he told you about the phone talk? Did Gillette tell you about it? A. Yes, sir; he said one had come in—only did mention it. Q. Then what made you go back out? A. I went out to tell them there was a phone call came in and said she was not of age. Q. You went back out and didn't try to get the license any further? A. Not until I had went back. Q. He did tell you you would have to swear to the girl's age? A. Sure. Q. You went outside before you would swear to the girl's age? A. Sure. Q. You went outside before you would swear to it? A. Not until I went back. Q. After he told you the first time you were in there, after he told you you would have to swear to this girl's age, you went outside; and didn't swear to it? A. didn't then; no, sir. Q. You didn't then? A. No, sir. Q. And why did you go outside without doing it? A. I just went outside to see the rest of them. Q. You went outside because you were afraid to sign it, and swear to it? A. No, sir. Q. And went outside to consult with these other parties to get a little courage from them? A. I didn't need any courage. Q. Then you went outside and talked to the girl, and she said she was 18? A. Yes. Q. You didn't have any more information on the subject of her age? A. She said she was 18. Q. She told you she was 18 before? A. Yes, sir; that is all. Q. It didn't make it any stronger because she said it the second time? A. No, sir. Q. In the first place—

"Mr. Ruth: Let him answer the question.
"The Court: All right.

"The Witness: No; it didn't make it stronger.

"Mr. Bristow: Q. Well, why was it you didn't sign it in the first place, swear to it in the first place? A. I would just not do it. Q. The truth is that you knew she, was not 18? A. No, sir; I did not.

"Mr. Bristow: That is all.

"Mr. Ruth: And you never swore to it? A. I never did.

"Mr. Bristow: I want to ask you if you didn't stand in there, before Guy Gillette, and hold up your hand like this (indicating) and swear to the contents of that statement; if you didn't hold your hand up that way? A. I positively did not."

Charles H. Ruth, for plaintiff in error.

The Attorney General and E. L. Fulton, Asst. Atty. Gen., for the State.

MATSON, P. J. (after stating the facts as above). From the foregoing statement of the evidence in this case it appears that there are only two disputed issues, the first being whether or not Gillette, the court clerk, swore the defendant to the affidavit, a copy of which is set out in the information, prior to the issuance of the marriage license; second, did the defendant have knowledge that the girl was under 18 years of age at the time the marriage license was applied for. On these two issues the evidence is in direct conflict. On all other questions of fact, while there are some slight discrepancies in matters of detail, there is no material conflict.

In submitting the law of the case to the jury, the court gave, among others, the following instructions:

"Instruction No. 5: The court instructs the jury that the statute provides that any person who, having taken an oath that he will testify, declare, depose, or certify truly before any competent tribunal, officer, or person in any of the

cases in which such an oath may be by law administered, willfully and contrary to such oath, states any material matter which he knows to be false, is guilty of perjury. The statute also provides, gentlemen, that an unqualified statement of that which one does not know to be true, is equivalent to a statement of that which one knows to be false. The term 'oath' as used in law includes an affirmation, and every other mode of attesting to the truth of that which is stated, which is authorized by law. You are further instructed that under the statute it is no defense to a prosecution for perjury that the oath was administered or taken in an irregular manner. Neither is it a defense to a prosecution for perjury that the accused did not know the materiality of the false statements made by him, if any, or that it did not in fact affect the proceedings in or for which it was made. It is sufficient that it was material and might have been used to affect such proceedings. The statute also provides, gentlemen, that any one guilty of perjury shall be punished by confinement in the state penitentiary for any period, not to exceed five years.

"Instruction No. 6: The court instructs the jury that, if you find and believe from the evidence in this case beyond a reasonable doubt, that within the county of Caddo and the state of Oklahoma, and on or about the 8th day of December, 1919, the defendant, J. O. Campbell, did intentionally, unlawfully, willfully, and feloniously, under oath, then and there legally administered to him by Guy R. Gillette, court clerk of Caddo county, Okla., make certain false statements and declarations and affidavit in order to procure a marriage license for himself and one Flora Francis, that she, the said Flora Francis, was of the age of 18 years, and whereas in fact and in truth the said Flora Francis was not 18 years of age, and that the said statements so made in said affidavit to obtain said marriage license were known to the said Campbell to be false at the time so made, then in that event the defendant would be guilty as charged, and you should so find; and should you find the defendant guilty as charged in the information you must assess his punishment at confinement in the state penitentiary for any period not to exceed five years. You

are further instructed, gentlemen of the jury, that an unqualified statement of a matter which the defendant did not know to be true is equivalent to a statement of that which the defendant knew to be false, if such statement be made, or was made, willfully, and was intended that it should be received as a statement of what was true in fact.

"Instruction No. 7: The court further instructs the jury that, before you can convict the defendant, you must believe beyond a reasonable doubt each and all of the necessary elements necessary to constitute the offense charged, which are as follows, to wit: First, that the offense occurred on or about the 8th of December, 1919; second, that, it occurred in Caddo county, Okla.; third, that Guy R. Gillette was the court clerk at said time of Caddo county, Okla.; fourth, that he administered an oath to the defendant prior to the issuance of the license; fifth, that the defendant willfully stated under oath that Flora Francis was 18 years of age; sixth, that the defendant knew at said time that she was under the age of 18, or willfully made an unqualified statement without knowing it to be true; seventh, that Flora Francis was at said time under the age of 18 years; eighth, and that the statement made with reference to the age of Flora Francis was material to the issuance of a marriage license.

"Instruction No. 8: You are instructed, gentlemen of the jury, that, as a matter of law, Guy R. Gillette was the court clerk of Caddo county, Okla., on the 8th day of December, 1919, and that he was authorized under the law to administer an oath to the defendant prior to the issuance of the license, and the statement as to whether or not Flora Francis was of the age of 18 years on said date was material.

"Instruction No. 9: You are instructed, gentlemen of the jury, that, should you find and believe from the evidence, or entertain a reasonable doubt from the evidence, that the defendant merely stated to Guy R. Gillette, court clerk, that no oath administered to him by Guy R. Gillette, court clerk, with reference to the age of the said Flora Francis, you should Flora Francis was of the age of 18 years, and that there was resolve such doubt in favor of the defendant, and acquit him.

"Instruction No. 10: The court further instructs the jury that, if you find and believe from the evidence in this case, or entertain a reasonable doubt from the evidence, that the defendant merely stated the age of Flora Francis to be that of 18 years, and upon said statement the clerk issued and delivered the license to the defendant, he would not be guilty, and you should so find, although you may further find and believe from the evidence that the said Flora Francis was under the age of 18 years, and that the defendant J. O. Campbell afterwards signed an affidavit and swore to said facts.

"Instruction No. 11: The court further instructs the jury that, although you may find and believe from the evidence that the defendant signed the application for a marriage license in a certain hardware store in the city of Anadarko, after the license had been delivered to him, still if you further find and believe from the evidence, beyond a reasonable doubt, that prior to the time the license was issued and delivered to him by the clerk that he willfully stated under oath that she was of the age of 18 years, he would be guilty as charged, and you should so find."

Considerable stress is placed upon the failure of the state to prove the material allegation of the information that Gillette, the court clerk, administered an oath to the defendant prior to the issuance of the marriage license. Upon this issue Gillette swore that he administered the oath. His deputy, while not so positive as to the administering of the oath, stated that Gillette asked the defendant if he would be willing to swear that the girl, Flora Francis, was 18 years of age, and also warned the defendant of the consequences if he made a false oath about the girl's age. The deputy remembers that the defendant said that he would be willing to swear to that fact. The defendant also admits that he said he would be willing to swear to that fact. The deputy did not issue the marriage license, and it is not clear from the record whether she was present during all the time the defendant was applying for and up until the time the license was issued.

The testimony of Flora Francis upon this question is somewhat contradictory, and her statements apparently cannot be reconciled. The defendant himself swore that Gillette did not administer an oath to him prior to the issuance of a marriage license. The testimony of the deputy court clerk and of the girl, Flora Francis, if discarded, leaves a clear conflict between the testimony of Gillette, the court clerk, and that of the defendant as to the administration of the oath to the defendant prior to the issuance of the marriage license. The jury determined this issue in favor of the state, evidently preferring to believe Gillette instead of the defendant. If Gillette was to be believed, then the fact that the signature of the defendant was obtained on the affidavit after the marriage license had been issued was immaterial. As section 7492, Compiled Statutes 1921, requires the clerk, upon application for a marriage license, to take the oath of a person legally competent to make one and having a personal knowledge of the facts, and section 1628, Id., defining perjury, is as follows:

"Any person who, having taken an oath that he will testify, declare, depose or certify truly before any competent tribunal, officer, or person, in any of the cases in which such an oath may by law be administered, willfully and contrary to such oath, states any material matter which he knows to be false, is guilty of perjury."

The omission, therefore, to have the defendant sign the affidavit or application at the very time the oath was administered, would be an irregularity which would form no defense to the prosecution. The material inquiries are: Was the proceeding such a one in which an oath may by law be administered, did the party take an oath to testify, declare, depose, or certify truly before any competent tribunal, officer, or person, and did such person willfully and contrary to such oath state a material matter which he knew to be false?

The conflict between the testimony on behalf of the state and that of the defendant as to the administration of the oath prior to the issuance of the marriage license was solely for the jury's determination. Remillard v. State, 10 Okla. Cr. 438, 133 Pac. 1132, 137 Pac. 370; Jones v. State, 10 Okla. Cr. 450, 137 Pac. 740.

It is also contended that the trial court erred in permitting leading questions to be propounded by the county attorney to the witness Flora Francis. This witness was a girl about 14 years of age at the time of testifying, and the record discloses that on her redirect examination the court permitted the county attorney to ask her a number of leading questions on matters elicited in her cross-examination, and the trial court overruled objections to the questions, and stated that he was "permitting the questions to be asked, for the reason that the witness appeared to be willing to answer 'Yes' to all questions, and leading questions were allowed in order that the jury might have the benefit of her willingness to answer 'Yes' to all questions."

The limitation and extent of examination of witnesses must rest largely in the discretion of the trial court. It appears from the record here that the court permitted leading questions to be asked this witness, more for the purpose of discrediting her testimony, than for the purpose of prejudicing the rights of the defendant.

An examination of this record convinces the writer of this opinion that the defendant was not in this instance prejudiced by the form and the extent of the redirect examination of this witness. Under such circumstances, and in view of the tender age of the witness, we find no abuse of discretion by the trial court, in overruling the objections to the questions on the ground complained of, such as to require a reversal of the judgment.

It is also contended that certain portions of the trial court's instructions were erroneous. In this connection it is first contended that the giving of that portion of the fifth instruction as follows: "You are further instructed that under the statute it is no defense to a prosecution for a perjury that the oath was administered or taken in an irregular manner," was harmful and reversible error, because it permitted the jury to find that, even had the court clerk administered no oath prior to the issuance of the marriage license, but had simply asked the question, as three witnesses testified he did: "Would you be willing to swear she is eighteen?" that such amounted to the administration of an oath in an irregular manner.

We are not impressed with the force or soundness of this contention when the instructions are considered as a whole, for by instruction No. 9 the jury is told that, if they should find or entertain a reasonable doubt from the evidence that the defendant merely stated to Guy R. Gillette, court clerk, that Flora Francis was of the age of 18 years, and there was no oath administered to him by Gillette, court clerk, with reference to the age of said Flora Francis, you should resolve such doubt in favor of the defendant and acquit him.

By instruction No. 10 the jury is told that, if the defendant merely stated the age of Flora Francis to be that of 18 and upon said statement the court clerk issued and delivered the license to the defendant, he would not be guilty, and you should so find, although you may further find and believe from the evidence that the said Flora Francis was under the age of 18 years, and that the defendant, J. O. Campbell, afterwards signed an affidavit and swore to said facts. In instruction No. 7 the jury is told in unmistakable language that they must find, among other things, beyond a reasonable doubt, "that Guy R. Gillette was court clerk of Caddo county,

and that he administered an oath to the defendant prior to the issuance of the license.''

Defendant requested no instruction asking the court to define what would be meant by the term ''administering an oath.'' The ordinary adult has a pretty clear conception of the meaning of that term, and, in the absence of any request for a more specific definition of its meaning, and in view of the matter contained in the instructions given, heretofore quoted, we are of the opinion that the jury was not misled by that portion of instruction No. 5 above quoted and complained of.

Complaint is also made of instruction No. 11. Practically the same objection is urged against this instruction as is urged against that portion of instruction 'No. 5 heretofore referred to. We believe the instructions as a whole sufficiently covered the law of the case and were as favorable in stating affirmatively the defense interposed as the evidence warranted.

Further, it is contended that the court erred in refusing to give the defendant's requested instructions Nos. 1 and 2. Instruction No. 1 was a request to advise the jury to return a verdict of not guilty. While the evidence in this case is particularly in conflict on some of the material elements of the offense, there is evidence on the part of the state, which, if believed, authorized the jury to find the defendant guilty. It is not error, therefore, to refuse to give such requested peremptory instruction. An examination of the record discloses that the law contained in special requested instruction No. 2 was substantially covered in the court's general charge.

This appeal presents a conviction based upon evidence clearly in conflict upon two of the elements of the offense necessary to convict. These apparent contradictions were, as heretofore stated, for the jury's reconciliation, if that could be done; if the jury could not reconcile the testimony, then

it became the province of the jury to determine whom to be-lieve and whom to disbelieve on these important issues. This is a case the jury could have decided either way. It is not the province of this court to disturb verdicts based upon con-flicting testimony, where there is evidence which, if believed, authorized the conviction. It is not our province to weigh the evidence, pass upon its conflicts or upon the credibility of the witnesses.

Undoubtedly, upon the information at hand, it would have conformed more consistently with the propriety of the duties of the clerk to have refused to issue the marriage license. To that extent perhaps the officer is open to criticism. On the other hand, the defendant displayed, after being warned, an unusual amount of determination to procure this license. The fact that the clerk is open to criticism is not sufficient reason for disturbing the judgment. The defendant's theory in our opinion was fairly and fully stated to the jury in the court's general charge, and, while some inaccuracies and incomplete statements of the law occur in separate paragraphs of the charge, these matters were cured in other portions of the charge, when considered as a whole, is not misleading, contra-dictory, or incomplete.

For reasons stated, the judgment is affirmed.

DOYLE and BESSEY, JJ., concur.