## F. G. GOODMAN v. STATE.

No. A-6258.   Opinion Filed Jan. 19, 1929.
(273 Pac. 900.)

Keller & Cameron and Brett & Brett, for plaintiff in error.

Edwin Dabney, Atty. Gen., for the State.

DAVENPORT, J.   The plaintiff in error, hereinafter called the defendant, was convicted in the district court

of Love county of the crime of grand larceny, and sentenced to imprisonment in the state penitentiary for a term of six months. Motion for new trial was filed and overruled, and defendant excepted, and has appealed to this court.

It appears from the record in this case that the defendant was regularly placed on trial for this offense on the 17th day of November, 1924; that the jury was impaneled, evidence was introduced, jury was instructed by the court, and argument of counsel had, and the trial completed about 5 or 6 o'clock on November 18, 1924; that the jury retired and considered the case for about an hour, when a written request was sent to the trial judge, asking in substance if they should take into consideration the intent, and the judge instructed them further, which instruction, omitting the address, is as follows:

"Answering the abo.ve interrogatory, you are referred to the general charge, paragraph V (5) wherein it is declared that the borrowing of money directly or indirectly, by an officer of the bank from the bank with which he is connected is itself larceny."

Indorsed on said piece of paper appears the following:

"Defendant objects to giving further instructions to the jury. Overruled, exceptions allowed.
"W. F. Freeman."

It further appears that the jury asked the court if they could give the defendant 30 days in jail, and the judge referred the jury to a paragraph of the general charge. The record further shows that about 9.30 or 10 o'clock that evening the court called the jury in the courtroom and instructed the foreman to deliver the papers to the baliff, and directed the jurors to retire for the night and return the next morning at 8:30, Novem-

ber 19, 1924, and to proceed to consider the case. And the jury returned as directed to the jury room, November 19, 1924, at 8:30 o'clock, and about 9 o'clock sent a note to the court asking if it could give the defendant 30 days in jail; whereupon, the judge directed the bailiff to have the jury seated in the jury box, and when it was seated the judge said to the jury:

"Gentlemen, this is all foolishness, you have been out on this case for several hours; there is no use asking foolish questions. You are discharged from the jury, and discharged from the panel. We have no use for you around the court. Go and get your pay," or words to that effect.

The attorneys for the defendant objected to the action of the court in discharging the jury, which objection was overruled, and defendant was allowed an exception. On the 23rd day of November, 1925, the case was again called for trial, and the defendant filed a motion, in the nature of a plea of former jeopardy, which, omitting the caption, is as follows:

"Comes now F. G. Goodman, the defendant in the above entitled cause, and respectfully represents and shows to the Court that on the 17th day of November 1924, the defendant was tried upon the information filed herein, which said Information duly charged this defendant with the crime of larceny; that at said time a jury was empanelled and sworn and testimony of witnesses for the State and for the Defendant was taken, and the case was argued by counsel for the State and for the defendant, and said jury was instructed as to the law in said case by the Honorable W. F. Freeman, one of the judges of the 8th Judicial District Court of Oklahoma, who presided at said trial; that thereafter, said jury retired to consider said case, and in a short time after their retirement they were permitted to return into open court and propound a question as to whether or not said jury could assess the punishment of the defendant at 30 days in the County Jail, and the Court, the said Honorable W. F. Freeman, referred them to the instructions,

and without answering said question; that thereafter, said jurors submitted a written question to said Judge to the same effect. Upon receiving said written inquiry, the said Judge ordered the bailiff to bring said jury before him, which was done, and said judge informed the jury that they were propounding foolish questions and that they were discharged from further consideration of the case and that they were further discharged from the jury panel and ordered them to get their pay and go home; that while said order was being made and said statements were being made by said judge, counsel for defendant was attempting to make objections to the discharge of the jury, and did then and there duly except to the action of the court in discharging said jury; that said jury was discharged over the objections and without the consent of the defendant; that they had had the case under consideration for less than six hours, and that no necessity existed for the said discharge.

"Defendant further says that he has caused several of the members of said jury to be summoned to testify in support of this plea, and here tenders the testimony of said jurors.

"Wherefore, the defendant prays for a hearing upon this plea and on consideration thereof, that he be discharged and that said Information be dismissed.

"F. G. Goodman."

The plea of former jeopardy was sworn to by the defendant. The record discloses that at the time the jury was discharged by Judge Freeman, a Mr. London was the court clerk who reported the case and kept a record of what occurred at the time the jury was discharged; that Mr. London died shortly thereafter and prior to the filing of the plea of former jeopardy; that his notes had not been transcribed and there was no one who could transcribe them.

The defendant introduced testimony to show what had occurred at the time the jury was discharged. C. W. Cameron testified, in substance, as follows: The court delivered his charge to the jury, and the jury re-

tired to consider of its verdict between 5 and 6 o'clock in the afternoon of the 18th of November, 1924; the jury was discharged immediately after convening on the morning of the 19th; I was the only attorney for the defendant who stayed in the courtroom all the time they were out; the jury went out for supper and never deliberated any before supper, and got back about 7:30 and went to the jury room, and about 9 or 9:30 retired for the night; the next morning the jury sent for additional information, and Judge Freeman called them in. The jury had written a request asking the court if they should take into consideration the intent, and Judge Freeman instructed them by calling their attention to the general charge. I was present and excepted to the additional instructions. The bailiff told the court the jury wanted to see him, they wanted additional information, and he told them to write it down, and they sent him a scrap of paper asking if they could give the defendant 30 days, and the court had the jury come in, and he said:

"Gentlemen, this is all foolishness, you have been on this case for several hours, and no use asking foolish questions. You are discharged from this jury and discharged from this panel. We have no use for you around the court."

While the statement was being made the attorney for defendant arose and interposed an objection, and Judge Freeman, when he finished his tirade, said:

"You can make your record, and take your exceptions. Exceptions are allowed."

The defendant was present at the time the jury was discharged. On cross-examination witness stated the case was submitted to the jury in the afternoon, and the jury deliberated about 2½ hours that night; the court then called them in and said he had been up a good deal lately, and told them to deliver the papers

to the bailiff, and they did. The jury had asked the court for additional instructions with reference to the penalty and the court had answered them by referring them to a certain section in the general charge, saying they would find that information in that charge. The next morning they asked if they could give the defendant a jail sentence; this was the second time they had asked the court about the penalty. They did not deliberate that morning; they came in about 8:30, and, before the court convened, the bailiff came to the court and told him they wanted additional information; he had adjourned until 9 o'clock. He told the bailiff he would convene the court in a few minutes, and he did; he had the bailiff open court and had the jury come in; they had been in the jury room about 30 or 40 minutes. The jury did not report to the court how they stood, nor did they report they could not agree.

R. A. Keller, who was one of the attorneys for the defendant, testified in substance that he was in the courtroom sitting with the defendant on the bench when the jury was called in; he did not hear the conversation between the bailiff and the court, and did not know what was going on until the jury was called in and took their seats; Judge Freeman remarked that it was all foolishness; that they were discharged; to go get their pay and go home. He immediately tried to object while he was talking to them. I could not get in a word, and did not have time to make any record; finally he finished and turned around and said,

"Defendant can have his objection, and all exceptions he wants."

The court seemed to become impatient with the jury, more or less in a rage, the way he talked to them. The jury immediately filed out and left. There was no report; they had not been asked whether or not there was any

likelihood of their arriving at a verdict, and they made no statement as to how they stood.

On cross-examinination witness stated he could not say whether or not a statement was made at the time as to whether or not they could not agree. The jury had not said that morning they were unable to agree upon a verdict. On redirect examination, he stated the jury was not asked that morning as to whether or not they could agree upon a verdict, or were hung, or anything of the kind. They made no such statement to the court— none of them. The court had them brought in, and when they were seated he began asking them, instructing them, or lecturing them as to the foolishness of that question.

Rutherford Brett, an attorney for the defendant, stated he remained in the courtroom until the case was submitted to the jury; he returned the next morning a few minutes after 9; that was the usual hour the court adjourned to; when he arrived at the courtroom that morning the jury had been discharged. On cross-examination he stated he arrived about 9 o'clock, and the first thing he learned when he got there was that the jury had been discharged in that case. The court had just convened and was transacting business. "I came directly to the courtroom when I arrived in town, and it could not have been more than 5 or 10 minutes after 9. It was not as late as 9:30."

The state called as a witness J. S. Batson, who testified he was court clerk of Love county, Okla.; that at the trial of this case he was deputy clerk; that this record was kept by the court clerk, W. L. Richards. "I was in the courtroom when the jury was discharged. The jury went out to deliberate something like dark, I guess about 6 o'clock; immediately thereafter the case was closed, court recessed until 7:30, at which time the jury went out for deliberation; I don't know what time it was,

pretty late for the fall of the year; I don't know when the court put them to bed; while I was there they called for additional instructions; I don't know what they wanted; I think they called twice that night; they reported they were unable to agree; I do not know whether that was that night or next morning; I believe it was the next morning; they did not report that; they came out and the judge asked them if they had agreed and they said they had not; I think they made the statement they could not get together; I would not be positive, that is my recollect. I could not state what time in the morning the jury was discharged, I could not be positive, however, the court was to set at 9, I would say about nine or after; I don't remember, I could not say."

On cross-examination he made the following statement: "I did not hear the jury tell the court previous to their discharge that they were unable to agree; I think I heard them say that next morning."

The witness, in response to the following questions, gave the following answers:

"Q. That it would not be able to agree? A. They just asked to come out and he called them out and asked them if they had reached a verdict and they said, no; and he asked them if it would be possible, told them rather he would like to have them reach a verdict. If it was that time or the next, the one before I could not say. They retired again and came out later. I don't know which time it was.

"Q. You think they came out twice? A. I know the statement was made, whether it was made the night before or not I could not remember. I can't be positive.

"Q. You heard the court tell them it was foolishness, did you? A. I heard the court—I don't know who stated it, he told them after they could not agree on the verdict, he told them to get up and get out of here, get their pay and go home. When I got through paying

off the jury it was noon, I don't know how long it took me to pay them off, but I know it was noon. Later, I saw the question submitted to the court about fixing the penalty at thirty days. The court told them to get out. I don't know whether it was made in response to their question or not. I could not be positive that the court answered their question that morning."

This is all the testimony necessary to refer to.

The first assignment of error is: "The court erred in overruling defendant's plea of former jeopardy." The defendant contends that he was duly informed against; a jury was duly impaneled, evidence instroduced, and jury instructed by the court, and the case argued by counsel for the state and defendant, and the jury retired to consider of its verdict; that the discharging of the jury by the court, over the objection of the defendant, was an abuse of discretion of the court and amounted to an acquittal for the same offense. Section 21, art. 2, of the Constitution of Oklahoma, is as follows:

"No person shall be compelled to give evidence which will tend to incriminate him, except as in this Constitution specifically provided; nor shall any person, after having been once acquitted by a jury be again put in jeopardy of life or liberty for that of which he has been acquitted. Nor shall any person be twice put in jeopardy of life or liberty for the same offense."

The defendant urges that the action of the court in discharging the jury over his objection was such an abuse of judicial discretion as to amount to an acquittal. 16 Corpus Juris, p. 254, § 408, in the last paragraph, states as follows. "The improper discharge of the jury after they have retired and considered their verdict, but before agreeing upon one, is equivalent to acquittal."

The record in this case discloses that the court reporter making the original record died, and that it was

impossible to get all the statements that occurred at the
time the court discharged the jury, and it became necessary
to introduce oral testimony of those who were present and
interested in the case at the time the jury was discharged
by the court. The testimony on behalf of the defend-
ant's plea of former jeopardy conclusively shows that
the jury was called into the courtroom by the court
after they had sent a note to the court asking if they
could impose a sentence of 30 days upon the defendant,
without the court answering the note, had the jury called
into the courtroom, and when the jurors took their seat
in the box, the court advised the jury that it was asking
foolish questions, and discharged the jury from the case,
as well as from the panel of the court, and told them
to go home, and the defendant did not consent to the
jury being discharged and objected to the action of the
court. The state did not call the trial judge as a wit-
ness, nor the county attorney, or the court clerk who
was making the record at the time the jury was dis-
charged. The state did call a witness who was a deputy
court clerk at the time, who identified the minutes of
the court made by the clerk, who testified to finding two
entries on the minutes of the court clerk relating to the
F. G. Goodman Case; one of the entries showing the jury
discharged, failed to agree, the case continued. The
witness for the state did not make these entries shown,
but stated he was present in the courtroom when they
were made by the clerk. There seem to have been two
entries with reference to the jury being discharged, as
shown by the testimony of the court clerk, who testified
on behalf of the state. The testimony all tends to show
that the jury did not advise the court that it could not
agree, nor did they make any statement to the court
they could not agree. The record is silent as to whether
or not when the court ordered the jury brought into the
courtroom he made inquiry as to whether or not they
had or could agree. All of the testimony tends to show

that when they sent to the court and asked if they could give the defendant 30 days' jail sentence, he had them brought in by the bailiff and informed them they were asking foolish questions, and discharged the jury from the case and from the panel, and directed the members of the jury to get their pay and go home. Some of the testimony tends to disclose that the court seemed to be irritable and seemed to be angered by the action of the jury.

The question to be determined is, Was the action of the court such an abuse of discretion as to operate as an acquittal of the defendant? The testimony shows that the jury had not been considering the case for any great length of time, and did not consider it very long after they returned to the jury room on the morning of the 19th of November, 1924, when the jury was called in by the court and discharged. The court did not attempt to answer the jury on the question as to whether or not they could give the defendant 30 days in jail, but, instead of answering the question, discharged the jury. The question argued and urged by the defendant is not a new question in this state. In the early territoral days, in the case of Schrieber v. Clapp, 13 Okla. 218, 74 P. 317, Judge Burford, speaking for the Supreme Court of Oklahoma Territory, said:

"The general rule is that the prisoner has been put in jeopardy when he has been put upon trial before a court of competent jurisdiction, upon an indictment or information sufficient to sustain a conviction, and the jury has been empanelled and sworn to try the case, and the jury is discharged without sufficient cause, and without the defendant's consent; and such discharge of the jury, although improper, results in an acquittal of the defendant." Cooley, Const. Lim. (6th Ed.) 399; Teat v. State, 53 Miss. 453, 24 Am. Rep. 708; Whitmore v. State, 43 Ark. 271.

Judge Furman, in Loyd v. State, 6 Okla. Cr. 76, 116

P. 959, adheres to the rule laid down in the case of Schrieber v. Clapp, supra.

In Gillespie v. State, 168 Ind. 316, 80 N. E. 835, the court makes the following statement:

"The following cases and authorities are in harmony with our own decisions, as they hold or affirm the doctrine that in a criminal prosecution the unnecessary discharge of the jury, after" they have "been empanelled and sworn, without the consent of the defendant, operates as an acquittal"—citing a long list of authorities.

In State v. Frisbee, 8 Okla. Cr. 406, 127 P. 1091, this court reaffirmed its former rulings, and, after quoting article 21, § 2, Okla. Const., stated "that this provision expressly declares that no person who has been once acquitted by a jury shall be again put in jeopardy of life or liberty for that of which he has been acquitted, and the Constitution goes further and in express terms provides: 'Nor shall any person be twice put in jeopardy of life and liberty for the same offense.' All authorities agree that when a jury is sworn jeopardy attaches. Under the latter clause of our Constitution, if jeopardy has once attached, a defendant cannot be placed again in jeopardy for the same offense, unless the jury were necessarily discharged, or unless the defendant agreed to their discharge, or unless a new trial is granted him upon his request"—citing Loyd v. State, 6 Okla. Cr. 76, 116 P. 959.

In the case of State v. Turpen, 54 Or. 230, 103 P. 439, the Oregon Supreme Court, in discussing this question, says: "It has been repeatedly held that, whether the discharge of the jury arose from the arbitrary act of the court, or from some mere whim or caprice of judge or jury, or from some accident or blumder, it was immaterial; in either case the result would be the same —the discharge of the defendant," and proceeds to quote

from the case of Teat v. State, supra: "But if an acquittal would ensue by operation of law from a discharge proceeding from tyranny, it must spring also from one proceeding from mere whim or caprice; and, if from the latter, then equally will it follow where the discharge of the jury has been caused by some blunder or accident with which the accused had no connection."

It is argued by the state that the court can exercise ordinary discretion in the matter of discharging a jury; that if it appears reasonably probable the jury cannot agree after the expiration of such time as the court deem proper, the court may discharge the jury—citing section 2732, C. O. S. 1921, which is as follows:

"Jury Discharged, When.—Except as provided in the last section, the jury cannot be discharged after the cause is submitted to them until they have agreed upon their verdict, and tendered it in open court, unless by the consent of both parties entered upon the minutes, or unless at the expiration of such time as the court deems proper, it satisfactorily appears that there is no reasonable probability that the jury can agree."

It is not disputed that conditions may arise where the court would be justified in discharging the jury. It will be seen that authority to discharge exists under the statute, if at the expiration of such time as the court deems proper it satisfactorily appears that there is no reasonable probability that the jury can agree. The question as to whether they have been kept together, and where there is no reasonable probability they can agree, are judicial questions. These questions cannot be arbitrarily determined by the court, but must be determined by the court from the facts and circumstances of the particular case, taking into consideration the length of time the jury has been considering the case and the probability of reaching a verdict. The court cannot, at his pleasure, without some facts upon which to predicate its actions, summarily discharge the jury be-

fore the jury has reported to the court it is unable to reach a verdict.

The state cited in support of its contention the case of Kent v. State, 8 Okla. Cr. 188, 126 P. 1040. The record in the Kent Case discloses a different state of facts to the record in this case. In the Kent Case, after the jury had been out something like 24 hours, reported in court, and each juror was interrogated by the court and each answered in his individual judgment it was impossible for the jury ever to arrive at a verdict in the case, the court after considering the facts discharged the jury and ordered the defendant to remain in custody. In this case the record fails to disclose that the jury reported to the court that it could not agree, nor did the court inquire of the jury as to the probability of its reaching a verdict. The court, upon receiving the note from the jury asking if it could impose a penalty of 30 days upon the defendant, called them into court without further proceedings, advising them they were asking foolish questions, discharged them from the jury and from the regular panel, and told them to go home.

We hold that the jury was unnecessarily discharged, over the protest and objection of the defendant, and that the discharge of the jury operated as an acquittal of the defendant, and that he could not be again placed upon trial for the same offense. Love v. State, 41 Okla. Cr. 291, 272 P. 1035.

The plea of former jeopardy was well taken and should have been sustained. For the reasons stated in this opinion, the case is reversed and remanded, with directions to discharge the defendant.

EDWARDS, P. J., and CHAPPELL, J., concur.