JOHN COPPAGE v. STATE.

No. A-9203.   Sept. 2, 1937.

(71 Pac. 2d 509.)

326

Jno. V. Roberts, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Jess L. Pullen, Asst. Atty. Gen., for the State.

DAVENPORT, P. J. The plaintiff in error, John Coppedge, informed against as John Coppage, hereinafter

for convenience referred to as the defendant, by information was charged in the district court of Garfield county with the crime of the larceny of an automobile; was tried, convicted, and sentenced to serve a term of five years in the state penitentiary. The record was properly saved, and the defendant, by case-made with petition in error attached, appeals.

The testimony in this case in substance is:

Lula Austin stated:

"I live at 606 West 8th street, in the city of Enid. On the 12th day of December, 1934, I was the owner of a Master Chevrolet Six coupe automobile; I bought this car on the 30th day of October, 1934; it was an all black coupe, had dual horns and a radio; I had owned it forty-two days; I took a trip in the car and in loading it dropped a box on the turtleback and dented it; on the 12th day of December, 1934, the car was taken from in front of my house; the next time I saw the car was on March 8th, 1935, at Carnegie, Oklahoma, in the possession of Mr. Caruth, an officer.

"I advised the officers the motor number, the color of the car, the radio and the dual horns; I had left some black coat hangers in the car, and on one occasion I had hauled some fertilizer in the car and had spilled some of it out in the car. When I went to Carnegie I identified the mark on the turtleback of the car; there was one coat hanger like the ones I used and left in the car; I also found a trace of the fertilizer in the back of the car.

"The radio had been removed from the car. You could see it was equipped for a radio; the dual horns were gone. I have no doubt about the car being mine.

"The car was turned over to me and I turned it in to the insurance company and they paid me the insurance. Mr. Cansler and Mr. Caruth were present in the garage when I examined the car and identified it. I have

no interest in the case except to give the true state of facts to the court."

On cross-examination witness stated the numbers had been mutilated, wheels had been changed; "It had black wheels when I lost it and they were straw colored wire wheels when I found it; the radio was off, and the dual horns gone and a heater in place of the radio; I have not seen the defendant or talked with him about the car."

Watt Caruth in substance stated:

"I am city marshal of Carnegie, and was in February and March, of 1935; I saw the defendant in Carnegie, he came to work for the Highway Department, fixing to build a bridge; I know the defendant as he used to live on a farm close by, and I saw this defendant in 1934. I took down the license number and sent to the Highway Department; one of the members of the Highway Department called me by phone and instructed me to take possession of the car, that it was a stolen car; I took the car from John Coppedge, this defendant, on or about the 20th day of February, 1935; the defendant stated he had bought the car from a second-hand dealer in El Reno, and told me the name but I do not remember it; I put the car in the Ford Garage, at Carnegie, and Mrs. Austin and an insurance man came down; Mr. Scruggs from the Highway Department was also there.

"The defendant stayed around for three weeks after we took possession of the car before he was arrested; when I took possession of the car the defendant gave me the keys to the car. The defendant told me he was a poker player. The defendant was around Carnegie in this car for about a week before I picked it up; I suspected it was a stolen car but I wanted to wait until I heard from the Highway Department."

On cross-examination witness stated the defendant told him he purchased the car from a man named G. L.

Gross, in El Reno; Gross got the title to the car and brought it to him.

J. H. Scruggs, testifying for the state, stated "From the description of the car given by Lula Austin, the owner of the car, I identified the car; it had a dent in the turtleback and bits of fertilizer in the back of the car." Scruggs' testimony is in substance the same as the other officers who made an inspection of the car.

The defendant, testifying in his own behalf, stated he bought the car from a used-car lot in El Reno, from a man named G. L. Gross, for $500; the defendant stated a woman and a second cousin of his were with him at the time; after he looked the car over, which was setting at the curb in front of the used car lot, "My cousin, the woman and I went with the salesman to the notary public who drew the transfer of title." Defendant stated he could not produce the notary for the reason that he had died in the meantime.

The defendant also stated Gracie Arganbright had moved to Kansas City, Mo., and he could not have her present. His cousin's testimony, taken at a former trial, was read to the jury, as he was absent. The testimony of the cousin showed that while the defendant and Gross went to the notary public to have the title prepared, he and the Arganbright woman remained in the car.

On cross-examination defendant was asked by the county attorney question after question attempting to connect the defendant with the larceny of another car, but the statements disclosed that if he had been connected with the car he had not been prosecuted.

The testimony on behalf of the state shows that each of the witnesses who spoke to the defendant about the

car was told he bought the car in El Reno, from Gross, and that he had paid $500 for it. It is further shown by the state's testimony that the defendant appeared in Carnegie with the car and was there for some time before the car was identified as being a stolen car, and that he drove it publicly upon the streets of Carnegie where any one might see it. The defendant denied he had anything to do with the stealing of the car, or that he had been in Enid at the time the car was stolen; that he did not know the car was stolen when he bought it from the man in El Reno. He further testified that when the charge was brought against him he tried to locate the man, G. L. Gross, from whom he bought the car, and that he made trips to different places trying to locate him and failed to do so. The state did not contradict this statement of the defendant, only contradicting it to the extent of saying there was no man in the city of El Reno by the name of G. L. Gross that could be located by the state authorities.

The foregoing is the substance of the testimony both on behalf of the state and the defendant.

The defendant in his petition in error alleges five errors committed by the trial court:

"1. That the court erred in refusing a hearing on and in overruling the plaintiff in error's plea of former acquittal on said charge.

"2. That the court erred in admitting incompetent, irrelevant, and immaterial testimony over the objection of the plaintiff in error.

"3. That the judgment of the court is contrary to the law.

"4. That the verdict of the jury and judgment of the court is contrary to the evidence and is not supported by the evidence.

"5. That the judgment imposes an excessive and unauthorized punishment on this plaintiff in error."

The defendant earnestly urges that the court erred in refusing a hearing and overruling his plea of former acquittal in the charge upon which he was tried and convicted in this case. The defendant in his plea of former acquittal or jeopardy sets forth that the minutes of the court show a jury was impaneled and sworn on September 26, 1935, and at 10:45 a. m., the said day the taking of evidence began; that the case was finally submitted to the jury at 12 m., September 27, 1935, and the court instructed the jury further and the jury retired for further deliberation at 5:40 p. m., and at 9:15 p. m. the minutes show further: The court convenes; all officials present; jury in the box; jury unable to agree upon a verdict. The court declares a mistrial. Jury excused from further consideration of the case, and until Tuesday morning, October 1st, 1935.

Section 21, art. 2, of the Constitution of Oklahoma, reads as follows:

"No person shall be compelled to give evidence which will tend to incriminate him, except as in this Constitution specifically provided; nor shall any person, after having been once acquitted by a jury, be again put in jeopardy of life or liberty for that of which he has been acquitted. Nor shall any person be twice put in jeopardy of life or liberty for the same offense."

It is contended by the defendant that the jury in his former trial was discharged without his consent, and it is further contended that the question of the discharge of the jury without the consent of the defendant before verdict, has been before this court several times, and the rules announced in these cases seems to be in accord with

the great preponderance of authorities throughout the United States.

Under our statute (12 Okla. St. Ann. § 583), in order that a court may be warranted in discharging the jury before verdict the record must show: First, the jury was discharged by consent of both parties entered upon the minutes of the court; or, second, unless at the expiration of such time the court deems proper and it satisfactorily appears that there is no reasonable probability that the jury can agree.

Under the statute and holdings of this court, the length of time the jury should be required to deliberate and the probability of an agreement must be determined by the facts and circumstances of the particular case, and the court's discretion will be conclusive unless it has abused its discretion in that regard. Kent v. State, 8 Okla. Cr. 188, 126 Pac. 1040, 1045.

In Kent v. State, supra, in the body of the opinion the court said:

"The prevailing rule is that when, after a reasonable confinement, the jury avow an utter inability to agree in respect to their verdict, the court in the exercise of sound discretion may discharge them, and that such discharge would not operate as a bar to further prosecution; and it is further held that the necessity for the discharge of the jury, whatever it may be, must appear on the record, and it must be adjudged by the court that such necessity existed for the discharge of the jury." Thompson v. U. S., 155 U. S. 271, 15 S. Ct. 73, 39 L. Ed. 146; Kelly v. U. S. (C. C.) 27 F. 616.

It is further held by the court in Kent v. State, supra, that authority to discharge the jury without the consent of the defendant exists under the statute, if at the expiration of such time the court deems proper, and it satis-

factorily appears that there is no probability that the jury can agree. The question whether they have been so held together, and whether there is a reasonable probability that they can agree, are judicial questions. As such they cannot be arbitrarily or capriciously determined by the court. The length of time a jury should be kept together, and the probability of an agreement, must be determined by the facts and circumstances of the particular case, and the court's discretion will be conclusive unless it has abused its discretion in that regard.

A careful examination of the minutes of the court of the previous trial of the defendant fails to disclose that when the court discharged the jury from further consideration of the case the defendant objected.

In Goodman v. State, 41 Okla. Cr. 405, 273 Pac. 900, this court in the first paragraph of the syllabus stated:

"Where the defendant has been put upon trial before a court of competent jurisdiction upon information sufficient to sustain a conviction, and a jury has been empaneled and sworn to try the case, and testimony has been taken, jury instructed, and jury retires to consider its verdict, and is then unnecessarily discharged without the consent of the defendant, the discharge of the jury operates as an acquittal, and the defendant in such case has been put in jeopardy and cannot again be tried for the same offense."

Beginning with Schrieber v. Clapp, 13 Okla. 215, 218, 74 Pac. 316, 317, on down to Goodman v. State, supra, this court has strictly adhered to the rule that where a jury is discharged without the consent of the defendant, such discharge of the jury, although improper, results in an acquittal of the defendant. There is nothing in this record to show that the court abused its discretion in discharging the jury. It is true he did not go into detail

and interrogate the jurors as to the probability of the jury agreeing, but the minutes of the court in part are as follows:

"Jury unable to agree on a verdict. The court declares mistrial. Jury excused from further consideration of the cause."

The defendant in his plea of former jeopardy states that the jury was discharged over his objection, but the record does not bear out this statement, and the minutes of the clerk fail to show that when the court ordered the jury discharged the defendant objected.

The record is silent on that question, and does not show that the court discharged the jury over the objections of the defendant.

In White v. State, 23 Okla. Cr. 198, 214 Pac. 202, 203, in the third paragraph of the syllabus the court said:

"Where the constitutional right is for the sole benefit of the accused, in the nature of a privilege, that right may be waived by express consent; or by implication, from conduct indicative of consent; or by failure to claim or assert the right in seasonable time."

In Allen v. State, 13 Okla. Cr. 533, on page 542, 165 Pac. 745, on page 748, L. R. A. 1917E, 1085, in the body of the opinion the court states:

"It is well established that after the jury has been empaneled and sworn in a criminal case any discharge thereof without sufficient cause operates as an acquittal, in that it effectually bars another trial for the same offense. But to have this operation and effect such discharge must have been made without the consent, expressed or implied, of the defendant. 1 Bish. New Crim. Law, § 998."

In State v. Frisbee, 8 Okla. Cr. 406, 127 Pac. 1091, in the second paragraph of the syllabus the court said:

"(a) A defendant in a criminal case may waive any right not inalienable, given him by the statute or by the Constitution, where it can be relinquished without affecting the rights of others and without detriment to the community at large.

"(b) A defendant in a criminal case may waive any right not inalienable, given him by the statute or by the Constitution, either by express agreement or by conduct, or by such failure to insist upon it in seasonable time as will operate as an estoppel to his afterwards setting it up against the state."

The defendant in this case by his silence, and without objecting to the discharge of the jury, and having the objections entered on the minutes of the court, waived his constitutional right, and he is not entitled to be discharged on his plea of former acquittal.

The remaining assignments of error will be considered together, as they relate to the same question, the admission of incompetent, irrelevant, and immaterial testimony over the objection of the defendant; the judgment of the court is contrary to law; the verdict of the jury and judgment of the court is contrary to the evidence and is not supported by the evidence; and the jury imposed an excessive and unauthorized punishment on this plaintiff in error.

A careful reading and study of the testimony shown by the record shows the loss of an automobile by Mrs. Austin, and two months or more later the car was found in Carnegie, in the possession of the defendant, and identified by Mrs. Austin as being her car that was stolen from in front of her home in Enid. The wheels had been changed and many other changes made in the car, yet the testimony shows Mrs. Austin identified the car by a dent

in the turtleback where she had dropped a box, and also by some fertilizer in the car.

The defendant's testimony shows the usual contention on a charge of the larceny of an automobile; that is, that he bought the car from a secondhand dealer, G. L. Gross, in El Reno, and paid $500 for it. G. L. Gross could not be found, and no other testimony was offered by the defendant showing any man by the name of G. L. Gross had been a resident of El Reno or engaged in business there. This court has repeatedly held that the jury is the exclusive judge of the weight of the evidence, and if there is a clear conflict in the evidence or it is such that different or logical inferences and deductions can properly be drawn from it, this determination will not be interfered with unless it is clearly against the weight of the evidence or appears to have been influenced by passion or prejudice. Choate v. State, 37 Okla. Cr. 314, 258 Pac. 360; Campbell v. State, 23 Okla. Cr. 250, 214 Pac. 738; Mayse v. State, 38 Okla. Cr. 144, 259 Pac. 277; Pickett v. State, 35 Okla. Cr. 60, 248 Pac. 352; Humberd v. State, 56 Okla. Cr. 23, 32 Pac. (2d) 954; Kisselburg v. State, 56 Okla. Cr. 46, 33 Pac. (2d) 236; Clemmer v. State, 56 Okla. Cr. 354, 40 Pac. (2d) 37.

There is no testimony in the record to show that the jury in rendering its verdict was influenced by passion or prejudice. The evidence is sufficient to sustain the verdict and judgment. The court properly instructed the jury as to the law applicable to the facts in the case. The defendant was accorded a fair and impartial trial. There are no errors in the record warranting a reversal.

The judgment of the trial court is affirmed.
DOYLE and BAREFOOT, JJ., concur.