## JIM JOHNS v. STATE.

No. A-3131—Opinion Filed April 15, 1919.

(179 Pac. 941.)

1. **PROSECUTING ATTORNEYS—Duties and Discretion.** A county attorney is vested with a personal discretion and responsibility as a minister of justice, and not as a mere licensed attorney. and he must act impartially, as well as refraining from prosecuting as in prosecuting. He must guard the real interest of public justice in behalf of all concerned, and he is disqualified from becoming in any way entangled with private interests or grievances connected with the private practice of law, and, while he may employ assistants in various ways not involving his official discretion or responsibility, he cannot delegate this discretion except to an assistant, duly appointed and qualified as provided by law.

2. **INDICTMENT AND INFORMATION—Misdemeanor—Signature by Assistant County Attorney.** It is essential to the validity of an information charging a misdemeanor that the county attorney subscribe his name thereto, or his name should be signed by a duly appointed and qualified assistant county attorney; and, where it appears that the name of the county attorney was signed by an employee in his office, who was not a licensed attorney, and who filed the same in the county court, the motion to quash the information should have been sustained.

*Appeal from County Court, Tulsa County;*
*H. L. Standeven, Judge.*

Jim Johns was convicted of a violation of the prohibitory liquor law, and he appeals. Reversed.

*Ed Crossland,* for plaintiff in error.

The Attorney General and *W. C. Hall,* Asst. Atty. Gen., for the State.

DOYLE, P. J. This appeal is from a conviction had in the county court of Tulsa county, in which Jim Johns, plaintiff in error, was found guilty under an information which charged that he did have in his possession intoxicating liquors with the intent to sell, barter, give away, and otherwise furnish the same in violation of the prohibitory liquor laws.

On the 19th day of May, 1917, he was sentenced in accordance with the verdict of the jury to be confined in the county jail for 30 days and to pay a fine of $250.

It appears that the information was filed in the county court on the 15th day of December, 1916; that on the same day defendant was arraigned in open court and filed a motion to quash the information "on the ground that the same was not subscribed nor signed by the duly elected and qualified county attorney within and for Tulsa county, nor any of his assistants or deputies," which motion is supported by the affidavit of Ed Crossland, attorney for the defendant, who further avers that the signature "J. P. Evers" to said information is not in the handwriting of the said J. P. Evers, that he knows the handwriting of Miss Gayle Pettus, stenographer in the county attorney's office at the time of the filing of the information, and that said signature is in her handwriting. On May 10, 1917, a hearing was had on the motion to quash, and J. P. Evers was called as a witness for the state, and testified that he was the former county attorney and held said office on the 15th day of December, 1916, and that Miss Gayle Pettus was his stenographer, and that he was sure that the signature "J. P. Evers" to the information is in Miss Pettus' handwriting. He further testified as follows:

"Q. Did you authorize her to sign your name to this information? A. I don't know as there was any specific authority to sign the name. I know she did those things, and that was the arrangement that was made. I just told her when certain officers came for informations to let them have them."

Cross-examination:

"Q. Did you prepare this information? A. No, sir. Q. Were you present at the time this information was sworn to or procured by Mr. Townsend in the county attorney's office? A. I think not. Q. You didn't authorize Miss Pettus to sign your name to this information. A. No. Q. You didn't go into this matter, or any of your deputies, to see whether or not the information should be granted. A. I don't think there was any of the county attorney's force present except Miss Pettus. By the Court: Q. Mr. Evers, you say you gave her authority to prepare informations? A. Yes, sir. Q. Now, will you state to the court just what that authority carried with it? A. I think that she was authorized to prepare those informations for filing in the court. Q. After that authority was given she would act in the premises and would prepare and sign and file informations, would she not? A. Yes. Q. And you understood that? A. I know that was taking place. Q. You understood, did you not, Mr. Evers, that was the authority implied in that understanding you had with her? A. Yes; she and I both understood that."

The action of the court in overruling the motion to quash the information is assigned as error.

The Code of Criminal Procedure directs that:

"The county attorney shall subscribe his name to informations filed in the county, superior or district court and indorse thereon the names of the witnesses known to him at the time of filing the same." (Section 5694, Rev. Laws 1910.)

It is essential to the validity of an information charging a misdemeanor that the county attorney should subscribe his name thereto, however, he can authorize his name to be signed to such informations by any qualified assistant county attorney.

In the case of *McGarrah v. State*, 10 Okla. Cr. 21, 133 Pac. 260, it is said:

"We know of no rule of law whereby a public officer may delegate power or authority involving official discretion or responsibility, except as prescribed by the statute. The law has very carefully guarded the administration of public justice from any interested or unauthorized intermeddling. The county attorney is a very responsible officer, selected by the people and vested with a wide personal discretion, intrusted to him as a minister of justice. There are many reasons why a power of this kind should be confined to the prosecuting officer. He is expected to be impartial in abstaining from prosecuting, as well as in prosecuting, and to guard the real interests of public justice in favor of all concerned. It is therefore of the highest importance to the public that this power should be carefully exercised, and that the responsibility should rest upon the officer to whom it is confided. By section 1557, Rev. Laws 1910, a county attorney is disqualified from becoming in any way entangled with private interests, or grievances connected with the private practice of law. * * * No doubt a county attorney may employ assistants in various ways, not involving his official discretion or responsibility; but our laws have only allowed his official discretion to be delegated where assistant county attorneys have been provided for by the statute. The public have a right to insist upon the performance of public duties that are strictly official in the prosecution of crime by county attorneys and assistants duly appointed and qualified as provided by law, and we think it would be directly contrary to public policy to allow or permit any general delegation of the county attorney's power or responsibility in this respect."

In the case of *Fullingim v. State,* 7 Okla. Cr. 333, 123 Pac. 558, it is held:

"It is essential to the validity of an information charging a misdemeanor that the county attorney shall subscribe his name thereto after the charge has been made, and the failure of the county attorney to so sign an information is sufficient ground for quashing the same."

In the case of *Benson v. State,* 10 Okla. Cr. 16, 133 Pac. 271, it is said:

"No doubt a county attorney may employ assistants in various ways not involving official discretion or responsibility, but he cannot authorize his name to be signed to informations by a person other than his duly appointed and qualified assistant."

And see *Viers v. State,* 10 Okla. Cr. 28, 134 Pac. 80.

In the case at bar the undisputed facts are that the name of the then county attorney was signed by an employee in his office, who was not a licensed attorney, and who filed the same in the county court. That being so, there has been no information signed by the officer designated by law filed in this case. It follows that the motion to quash the information should have been sustained. The judgment appealed from is therefore reversed, and the cause remanded, with directions to sustain the motion to quash the information.

ARMSTRONG and MATSON, JJ., concur.