**In the Matter of the Habeas Corpus of Edward Leon WILLIAMS.**
**No. A–12782.**

Court of Criminal Appeals of Oklahoma.
June 26, 1959.

**654**

Whit Pate, Oklahoma City, Thomas Dee Frasier, Tulsa, for petitioner.

Mac Q. Williamson, Atty. Gen., Sam H. Lattimore, Asst. Atty. Gen., for respondent.

POWELL, Presiding Judge.

Edward Leon Williams was sentenced by the district court of Tulsa County to die for the kidnapping of a ministerial student in Tulsa County. The victim was robbed of his money, his automobile taken, and at the end of a road in an isolated wooded area in Muskogee County the kidnapped young man was marched out and shot to death. The judgment of the trial court was appealed to this court, and the case was affirmed. See Williams v. State, Okl.Cr., 321 P.2d 990. The opinion was rendered December 4, 1957, and exhaustive briefs were filed in support of a petition for re-hearing, and rehearing was denied on February 5, 1958. Thereafter a second petition for rehearing was filed and oral arguments heard, and that petition was denied on February 26, 1958. Thereafter an appeal was perfected to the Supreme Court of the United States, and that Court on February 24, 1959, held:

> "We have now treated with all of petitioner's claims, and failing to find any deprivation by the Oklahoma Courts of any of his fundamental rights, we must hold that petitioner was not denied due process of law."

See Williams v. Oklahoma, 358 U.S. 576, 79 S.Ct. 421, 3 L.Ed.2d 516.

Following the above, the date of execution was advanced to give counsel time to appear before the Pardon and Parole Board to seek a recommendation by that Board to the Governor that the death sentence be reduced to that of life imprisonment. Having failed there, the Governor set the date of execution for June 5, 1959.

We take notice that on the morning of June 3, 1959, counsel filed in the Supreme Court of Oklahoma, case No. 38737, styled Edward Leon "Pete" Williams v. R. R. Raines, acting warden of the State Penitentiary of Oklahoma, an application for such court to assume original jurisdiction of an action having for its purpose the obtaining of a writ of prohibition against the Warden inflicting the death sentence by means of electrocution, contending that subsequent to two and one-half years following the enactment of Senate Bill 228, 22 O.S.A. § 1014, there is no authority of law for the execution of the death sentence by any means other than by infliction of a lethal gas; denying that the issues had been settled in this State[1], and setting out other grounds. The Su-

---

1. See 22 O.S.A. § 1014, and Hathcox v. Waters, 1951, 94 Okl.Cr. 286, 234 P.2d 950, where the question was considered by this Court.

preme Court on the same day entered an order denying the application to assume original jurisdiction.[2]

In the afternoon of June 3, 1959, new and different counsel filed in this Court an application for writ of habeas corpus, and we summarily waived Rule 23 requiring presentation of the matter to a district court before hearing in this Court, and ordered Robert R. Raines, acting warden of the Oklahoma State penitentiary, to respond by 10:00 a. m., June 4, 1959, and set the petition for hearing for that hour and day. On the morning of June 4, 1959 counsel filed an amendment to their original petition, setting up four additional grounds to the two raised in the original petition. Response was filed by the Attorney General for the Warden, and oral argument was heard, at the conclusion of which in view of the imminence of petitioner's execution, and the failure of counsel to support his petition with a brief, this Court granted petitioner ten days to file brief in support of his petition, and the Attorney General five days thereafter to file answer brief for the Respondent. We requested the Governor of Oklahoma to stay the execution of the death sentence for thirty days to afford time to process the petition in question.[3]

On June 15, 1959 counsel filed an instrument designated: "Final Amended Petition", abandoned points most earnestly urged on oral argument but not supported by citation of authority, and filed for the first time a brief and two affidavits to support the allegations of his Final Amended Petition. The Attorney General was ordered to respond. Supplemental response has been filed, and we shall first treat the two propositions not involving disputed facts.

In considering each of the propositions advanced, it must be kept in mind that in habeas corpus proceedings only those matters alleged in the petition which pertain to alleged lack of jurisdiction of the trial court may be considered. If the court had jurisdiction of the person and the subject matter, the writ may not issue. People v. McLeod, Okl.Cr., 306 P.2d 364; In re Maynard, 79 Okl.Cr. 215, 153 P.2d 505. And the writ of habeas corpus does not serve as an appeal and a review of the facts. DeWolf v. State, 96 Okl.Cr. 382, 256 P.2d 191; Tilghman v. McLeod, Okl. Cr., 306 P.2d 732. Also, petitioner in a habeas corpus proceeding has the burden of sustaining the allegations of his petition, where allegations are denied by response. Ex parte Wilson, 81 Okl.Cr. 233, 162 P.2d 786; Ex parte Hunt, 93 Okl.Cr. 106, 225 P.2d 193; Ex parte Tucker, 91 Okl.Cr. 391, 219 P.2d 245.

It is first contended that the information was not signed or endorsed by the county attorney, and for such reason the district court of Tulsa County did not acquire jurisdiction of the case, and that the information was void.

There was attached to the petition a purported photostatic copy of the original information, which showed the printed or typed name of the county attorney on the

2. We note that some of the persons identified with the within case, possibly any case where the death sentence might be imposed, caused House Bill No. 853 to be introduced in the current session of the Legislature, which provides: "No death sentence heretofore or hereafter imposed by a judge upon a plea of guilty shall ever be executed except or unless it shall have been affirmed and ordered by all justices of the Court of Criminal Appeals." We further note that the Bill, as finally submitted to the Senate on June 8, 1959, was substantially modified, but providing that a death sentence can only be affirmed by a majority vote of the appellate court, which is true in the case at bar; and further providing for an automatic appeal in all cases where death sentence might be imposed on a plea of guilty. This is mentioned to demonstrate the intense interest of persons in cases involving such a sentence.

3. The procedure mentioned was by reason of doubt as to the authority of this Court to issue stay of execution after appeal to this Court had become final and the Governor had issued a stay after the date fixed by the Court of Criminal Appeals. See Art. 6, § 10, Okl.Const., and Hathcox v. Waters, 94 Okl.Cr. 286, 234 P.2d 950.

information, but no signature. No evidence was offered or heard in this regard, because under the facts in the case, the lack of the signature of the county attorney to the information may not be raised at this late hour. The matter was in no manner called to the attention of the trial court prior to plea or sentence, or in motion for new trial, and was not called to the attention of this Court on appeal (Williams v. State, supra), or to the attention of the Supreme Court of the United States on appeal to that court. The rule is that jurisdiction of the subject matter cannot be conferred by consent, and the want of such jurisdiction cannot be waived, but jurisdiction of the person can be conferred by consent, and the want of such jurisdiction is waived unless objected to in apt time. Roberts v. State, 72 Okl.Cr. 384, 115 P.2d 270; In re Duty, Okl.Cr., 318 P.2d 900; Coppage v. State, 62 Okl.Cr. 325, 71 P.2d 509.

The basic case in this jurisdiction where the issue is treated in some detail and the various involved statutory provisions, both misdemeanor and felony, are quoted, discussed and distinguished, is the case of Brown v. State, 1913, 9 Okl.Cr. 382, 132 P. 359, in an able opinion by Judge Furman, and which was concurred in by Judges Doyle and Armstrong. There the court said, in paragraph 1(d) of the syllabus:

"The Code of Criminal Procedure directs that all informations shall be signed by the county attorney. This is required as a guaranty of good faith and to protect a defendant against prosecution by private parties without authority of law; but where a defendant pleads to an information which is not signed by the county attorney, and without objection goes to trial thereon, he waives all right to afterwards object to the information upon this ground, and cannot be heard upon appeal to complain that the information was not signed by the county attorney as directed by law."

In the body of the opinion, Judge Furman, after arriving at the conclusion that the signature of the county attorney was not necessary to give the court jurisdiction so far as the person charged was concerned, and that under such situation the signature related to a personal right of the accused that might be waived, said:

"If the verification of an information in a misdemeanor case can be waived, and if a preliminary trial before an examining magistrate in a felony case can be waived, with what show of reason can it be said that the signature of the county attorney to an information cannot also be waived?' The only ground upon which the contention of counsel for appellant could be sustained *would be for this court to hold that the signature of the county attorney was necessary to give the court jurisdiction of the subject-matter.* Certainly no one would contend for such an absurd proposition as this. It simply protects a personal right of a defendant, and, if necessary to give jurisdiction of his person, it may be waived, for the law is well settled that, while jurisdiction of the subject-matter cannot be conferred by consent, yet that *jurisdiction of the person* can be given by consent and is waived if not presented in apt time.

\* \* \* \* \* \*

"We therefore hold that, if the defendant pleads to an unsigned information, he thereby admits that the prosecution is being conducted by the proper officers and waives his right to afterwards complain of this defect. This rule cannot injure an innocent person or deprive him of a single substantial right, and does not in the least interfere with the administration of justice. Any other rule would permit those lawyers who might so desire to juggle with justice and play with loaded dice. Courts should never allow the process of the law to be used for such purpose." (Emphasis now supplied.)

Later, in Simpson v. State, 1919, 16 Okl. Cr. 533, 185 P. 116, a felony case, in an

opinion by Doyle, P. J., concurred in by Armstrong and Matson, Judges, it was said:

"Where a defendant fails to file a motion to set aside an information which was not signed by the county attorney at the time it was filed, and fails to interpose a demurrer thereto, and without objection goes to trial thereon, he waives all right to afterwards object to the information upon this ground, and cannot be heard upon appeal to complain that the information was not signed by the county attorney as directed by law."

Then in Braught v. State, 1919, 17 Okl. Cr. 1, 179 P. 769, 775, in an opinion by Armstrong, J., with Doyle, P. J., and Matson, J., concurring, it was said:

"McGarrah v. State [opinion by Doyle], 10 Okl.Cr. 21, 133 P. 260, is a prosecution for a misdemeanor, and in said case it is held:

" 'The conviction of a person under an information charging a misdemeanor, not signed by the person designated by law, is void for want of jurisdiction in the trial court.' [Emphasis now supplied.]

"This rule does not prevail where the offense charged is a felony, and the defendant has waived a preliminary trial and been held to answer. Besides, in the McGarrah Case the information was attacked, prior to the plea entered, by motion to quash, and the evidence in that case discloses that the attorney signing the information was not an assistant county attorney de facto, but an attorney privately employed and paid by the county attorney, who was not even present when McGarrah was tried, and in no wise adopted the action of said attorney signing the information, and therefore the case of State v. McGarrah, supra,

is not in conflict with the views herein expressed."

Following this we have the case of Roberts v. State, 1941, 72 Okl.Cr. 384, 115 P.2d 270, 272, the first misdemeanor case that has come to our attention that was appealed to this Court where the question was not raised in the trial court. There are many cases involving misdemeanors where the question was raised and where this Court in each instance remanded the case because the defendant did not waive jurisdiction of the court over his person. See Fullingim v. State, 7 Okl.Cr. 333, 123 P. 558; Johns v. State, 15 Okl.Cr. 630, 179 P. 941; Radford v. State, 23 Okl.Cr. 407, 215 P.2d 218; Ex parte Long, 26 Okl. Cr. 259, 223 P. 710. Jones, J., wrote the opinion in the case of Roberts v. State, supra, which was concurred in by Barefoot, P. J., and in the body of the opinion said:

"It is contended that the conviction of a person under an information not signed by the county attorney is void for the want of jurisdiction of the trial court. In connection with this contention, it is stipulated by the parties that the county attorney's name, which appeared on the information filed against the defendant, was signed by his stenographer.

"Several cases are cited in the brief of defendant in support of this proposition. A study of those cases [4] discloses that in each instance the question of the insufficiency of the information was properly raised by a motion to quash or a demurrer prior to the time the defendant entered his plea to the merits of the case. While a reading of the syllabus of some of the cases cited by counsel for defendant would indicate that a judgment rendered on an information charging a misdemeanor is void, where the information is not signed by the county attorney, it is significant that this court

4. Among the cases considered in the Roberts case were McGarrah v. State, 10 Okl. Cr. 21, 133 P. 260, and Ex parte Long,

26 Okl.Cr. 259, 223 P. 710, so strongly relied on by petitioner in the within case.

has never made such a ruling except where the question is raised by proper objection before pleading to the merits."

If there was a conflict between the rule in misdemeanor cases and felony cases, such difference was resolved by Roberts v. State, supra. But we have here a felony case, and no doubt can be cast upon the application of the rule that we have quoted from Brown v. State, supra. See also the later cases of Landon v. State, 1946, 82 Okl.Cr. 336, 166 P.2d 781 and Richards v. State, Okl.Cr.1954, 278 P.2d 253 opinion by Brett, J., concurred in by Powell, P. J., and Jones, J.

Other jurisdictions have considered the issue and are in accord with the rule in Oklahoma. See Frisbie v. United States, 1895, 157 U.S. 160, 15 S.Ct. 586, 39 L.Ed. 657, opinion by Mr. Justice Brewer. See also Nakano v. United States, 9 Cir., 262 F. 761; certiorari denied 254 U.S. 632, 41 S.Ct. 7, 65 L.Ed. 448; 24 C.J.S. Criminal Law § 1671; Brooks v. United States, 9 Cir., 8 F.2d 593; Wiltsey v. United States, 4 Cir., 222 F.2d 600.

If the matter now complained of had been raised in the trial court, the net result would have been to permit the county attorney to affix his signature. He was present and the record leaves no doubt but that he in fact approved the prosecution. We hold the matter complained of is insufficient to constitute a ground for, or give this Court jurisdiction to issue the writ of habeas corpus.

 The next contention is that the information under which petitioner was prosecuted was actually prepared in accordance with the provisions of 21 O.S.1951 § 741, rather than section 745 of the same title, and, therefore, the penalty provision of section 741 providing for a maximum sentence of ten years should be applied, and that petitioner was prosecuted under the wrong statute.

We have carefully studied the above statutory provisions and the information in light of the argument advanced, and while it is true that the information did contain some wording apparently taken from paragraph numbered "First" of section 741, such wording could not possibly have misled the defendant, the essential allegations being unmistakably in the language of section 745 of the statute. It charges defendant with kidnapping one Tommy Cooke, and unlawfully seizing and confining him against his will for the purpose of extorting a thing of value and advantage from him. If defendant had been dissatisfied with the information and had not understood the charge, he had ample opportunity by motion or demurrer to have tested out his contentions now advanced. We conclude that the information was sufficient to apprise the defendant of the offense with which he was charged with such particularity as to enable him to prepare for trial, and so identified and defined the offense that accused, if convicted or acquitted, would have been able to have defended himself if again charged with the same offense. Deberry v. State, 91 Okl. Cr. 399, 219 P.2d 253. And this Court has said that generally an indictment or information is sufficient if the offense is charged in the language of the statute. State v. Tyler, 82 Okl.Cr. 112, 166 P.2d 1015. In Lynch v. United States, 5 Cir., 189 F.2d 476, certiorari denied by the Supreme Court of the United States, 342 U. S. 831, 72 S.Ct. 50, 96 L.Ed. 629 it was held that under the new rules of criminal procedure, it is only necessary to charge offense in the language of the statute so as to put defendants on notice of accusation against them. See also People v. Kennedy, 116 Cal.App.2d 273, 253 P.2d 522 involving sufficiency of information charging kidnapping. The common law doctrine of strictly construing criminal law and criminal procedure, and that an information should be positive to a certain intent in every particular is not in effect in Oklahoma. Gibson v. State, 85 Okl.Cr. 228, 186 P.2d 667.

Above this, in the recent case of Beavers v. State, Okl.Cr., 339 P.2d 790, we said:

"Habeas corpus' may not be used either before or after conviction to test the sufficiency of the indictment or information."

Citing: In re Sullivan, 82 Okl.Cr. 364, 170 P.2d 260; Ex parte Wright, 78 Okl.Cr. 157, 145 P.2d 772.

In Ex parte Burnett, 78 Okl.Cr. 147, 145 P.2d 441, in paragraph 3 of the syllabus, this Court held:

"The general rule is that the writ of habeas corpus may not be used either before or after conviction to test the sufficiency of an indictment or information. Where an indictment or information is merely defective, demurrable, or subject to a motion to quash, or technically insufficient, but may be amended to state the crime sought to be charged, the person held by process based upon it is not entitled to test the sufficiency of the indictment or information by habeas corpus. Where, however, the indictment or information is fundamentally defective in substance, so that it cannot be amended to charge a crime in any manner or form or by any intendment, it is void, and a person held by process based on such void charge is entitled to discharge by habeas corpus."

By reason of what we have said, it is our conclusion, as to petitioner's second proposition, that it, also, is insufficient to constitute a ground for or to give this Court jurisdiction to issue the writ of habeas corpus.

In his "Final Amended Petition" petitioner alleges that he was not furnished a copy of the information or a list of witnesses with their post office addresses, all as required by Article 2, § 20 of the Oklahoma Constitution; that he did not knowingly and effectively waive the preliminary hearing that he was entitled to under Article 2, § 17 of the Oklahoma Constitution, and that he was deprived of his right to effective counsel at all stages of the proceedings, thus violating Article 2, § 20, and Article 2, § 7 of the Oklahoma Con-

stitution, and the Sixth and Fourteenth Amendments to the Constitution of the United States.

Petitioner further alleges that the plea of guilty that he made and that was accepted by the court was made under the belief and implied assurance that he would not receive the death penalty, and that the court did not adequately advise and inform him of his rights before his plea of guilty was accepted, and therefore Article 2, § 7 of the Oklahoma Constitution, and the Fourteenth Amendment to the United States Constitution were violated.

To support the above allegations present counsel for the petitioner attached to his Final Amended Petition an affidavit signed by petitioner, dated June 13, 1959, and one by Troye Kennon dated the same day.

In his affidavit petitioner goes into matters not germane to the questions raised in his petition, and claiming that he received a beating from an Oklahoma Highway Patrolman, Carl Stevens, at the time of his arrest at Poteau, and that he confessed to him by reason of the beating. He states that the day after his arrest the assistant county attorney and sheriff of Muskogee County took a statement from him, that it was a very long statement and that he never would sign it, but that Mr. Jones, the assistant county attorney thereafter wrote a very short statement and that petitioner did sign that one. Of course, any statement obtained by coercion or by beating would have been inadmissible on a trial, but there is no evidence that the State would have relied on any such evidence, if petitioner's statement is true. It is significant that the name of Carl Stevens is not endorsed on the information.

Concerning the happenings after petitioner was taken to Tulsa County to answer to the charges of armed robbery and of kidnapping, petitioner states:

"On November 21, 1956 I was arraigned in Common Pleas Court in Tulsa County. I did not have an attorney and a lawyer, who I have been informed was Mr. Finis Smith, was

out in the court room or out in the hall and the Court had him to appear with me at arraignment. I did not discuss the case with Mr. Smith and haven't seen him before or since, to my knowledge. For some reason arraignment was passed for two days. The court next appointed the Public Defender, Mr. Dickason, to represent me and we had another arraignment. I did not discuss the case with Mr. Dickason as he didn't ask me for anything and at any rate I entered a plea of not guilty. Between then and the next two weeks, I saw Mr. Dickason twice, but did not discuss the case with him and about all that he said was that he was working out a plea.

"When the case came up for preliminary hearing it was passed the first day because Mr. Dickason was sick or something. The next day I was brought back down again and Mr. Dickason still was not available. At that time Mr. Frank Leslie and Mr. Troy Kennon, who are lawyers there in Tulsa, were sitting in the court room and the Judge asked them to represent me. We went back into another room and talked for a minute or two and they said that I was entitled to a preliminary hearing if I wanted one, but that they didn't see any sense to holding one if I wanted to plead guilty that I wouldn't get over life imprisonment anyway. I did not discuss the facts of the case with them at all, and our conference didn't last over two or three minutes. I had never seen them before or since, to my knowledge.

"After this, the district court assigned Mr. Fred Woodson, who was the Public Defender, to represent me. Mr. Woodson, I understand, had been admitted to the Bar about sixty days at this time. He was very conscientious and we consulted several times, but our consultations were nearly all directed towards a plea and not to the facts of the case or other circumstances. Mr. Woodson told me that he did not want to take any chances whatsoever on a plea and that he was attempting to arrive at the sentiments of the District Judges on the question before considering entering a plea. He approached one or two Judges and neither of them would give him any satisfaction.

"Not long before the day on which it was set for trial, he came to me and told me that he had talked with Judge Webb, and although Judge Webb had not outright committed himself, Mr. Woodson was perfectly satisfied that I would receive no more than life imprisonment for a guilty plea before Judge Webb. Mr. Woodson told me that Judge Webb told him that he had never sentenced a man to death and that Judge Webb had very strongly indicated that he was conscientiously opposed to capital punishment. Mr. Woodson said that this was as far as a District Judge could go and still not make an outright commitment on the matter, and that such a commitment would be improper. Mr. Woodson was perfectly satisfied that I would receive life, and told me so.

"Some two months before, when I was sentenced by Judge Carrol at Muskogee, who was the District Judge there, I had heard Judge Carrol state from the bench that upon a plea of guilty in Oklahoma that no court could expect a death sentence to be upheld. He said that the only time that it had happened that the Criminal Court of Appeals quickly set it aside.

"This statement of Judge Carrol's, coupled with what Mr. Woodson had told me relative to Judge Webb's feelings about death sentences and capital punishment, was the reason I waived a jury trial and pled guilty. Since I was already doing one life sentence I did not think that another one would hurt anything one way or another."

The second affidavit attached to petition is signed by Troye Kennon, and reads:

"That affiant is a practicing attorney in the city of Tulsa, Oklahoma, having been so engaged for a period of 20 years. That on the 12th day of December, 1956, affiant had occasion to be in the court room of the Honorable Judge Lloyd McGuire, in the Common Pleas Court in and for Tulsa County, Oklahoma. That the matter of Edward Leon 'Pete' Williams, charged with kidnapping and armed robbery was set before Judge McGuire, for preliminary hearing. That Judge McGuire requested affiant and Frank Leslie, also a practicing attorney in the city of Tulsa, Oklahoma, to take Mr. Williams into the jury room and discuss with him the case immediately above mentioned. That Mr. Leslie and myself went into the jury room with Mr. Williams. I would like to state that I had never seen Mr. Williams before and this was the only time I discussed any part of his case with him. Mr. Williams stated: 'All I want to do is beat the hot squat'.

"He then asked us if we thought he could. I advised Mr. Williams that in my opinion he probably would not receive the electric chair but that in the final analysis, I would not be the one who decided. That would be left up to the judge. I further advised Mr. Williams that if he desired a preliminary hearing in these matters, we would be delighted to represent him for the preliminary hearings. He stated that he did not want a preliminary hearing in the matter and requested us to waive a preliminary hearing in both cases which Mr. Leslie and I did.

"Affiant further states that we did not discuss with Williams any of the purported facts in the case because he advised us that he did not desire a preliminary hearing.

"Further affiant saith not."

The Attorney General in his Supplemental Response contends that petitioner has not set up a state of facts which would make the judgment and sentence void upon the face of the record necessary to entitle petitioner to a release by writ of habeas corpus.

Attached to the Response is an affidavit by Finis Smith, attorney who at the request of the examining magistrate appeared with and for the defendant in the Common Pleas Court for arraignment purposes only on November 21, 1956. He states that the court advised petitioner that a public defender would be assigned to defend him. He states that he does not have a firm recollection of the matter, but that it is his belief that Assistant County Attorney Simms read the preliminary information, and handed a carbon copy to the defendant, and that the court advised the defendant that he should present the copy to his attorney, and that petitioner was given twenty-four hours in which to enter a plea.

Also attached to the response is an affidavit by Quinn M. Dickason, who says that on November 23, 1956 he was public defender of Tulsa County and had been for almost ten years, and that on that date he was appointed by a judge of the Common Pleas Court to represent Edward Leon Williams in case No. 97987, robbery with firearms, and in case No. 98045 on a charge of kidnapping. Affiant states that after consultation with the defendant and after charges were read to the defendant on his arraignment on November 23, 1956, the defendant entered a plea of not guilty.

Mr. Dickason further states:

"That this affiant at that time had practiced law in Tulsa County, Oklahoma for over 29 years, with the exception of 2½ years in the United States Army during World War II.

"That affiant discussed the case fully with defendant on a number of occasions after the arraignment in Common Pleas Court, that affiant also read an unsigned, written statement purportedly made by Edward Leon Williams and also read a confession in Edward Leon Williams' handwriting,

signed by him, wherein Edward Leon Williams confessed to the kidnapping of Tommy Cooke in Tulsa County, Oklahoma, and the slaying of Cooke in Muskogee County, Oklahoma. Affiant also read the transcript of the testimony taken in the trial of Edward Leon Williams for murder in Muskogee County, Oklahoma. That this affiant became too ill in a few days before defendant's preliminary hearing to appear for the defendant at his preliminary hearing and affiant had no further connection with the criminal cases against Edward Leon Williams, except as above detailed. That affiant had no conversation with Edward Leon Williams about any plea in his case except on arraignment in Common Pleas Court.

"Further affiant sayeth naught."

The case came on for preliminary hearing on December 12, 1956 before the Hon. Lloyd H. McGuire, Judge of Division No. 2 of said Court. According to the stenographic report attached to the response, the following proceedings were had:

"By the Court: Let the record show that due to his illness, the Public Defender Quinn M. Dickason, has been relieved of his duties of representation of the defendant, Edward L. Williams, and that Troye Kennon and Frank Leslie, both members of the Tulsa County Bar and admitted to practice before the Supreme Court of the State of Oklahoma, are hereby appointed as friends of the Court to advise with the defendant as to his rights and privileges as such defendant, they being appointed to represent the defendant in the preliminary only. I will inquire of the defendant, Mr. Williams, if the appointment of these two attorneys to represent you is entirely satisfactory to you?

"By Mr. Williams: Yes, it is.

"By the Court: Is there any question in your mind as to whether or not they have advised you properly and completely?

"By Mr. Williams: No, no question.

"By the Court: I am informed that you had consulted with the Public Defender, Mr. Dickason, previous to your arraignment?

"By Mr. Williams: Yes.

"By the Court: And is it correct that you had agreed with him that you should and would waive a preliminary on this charge?

"By Mr. Williams: Yes, we decided that I would waive a preliminary.

"By the Court: Very well.

"By Mr. Kennon: If the Court please, as you stated, we have discussed this matter at some length and attempted in the best way we could to answer any and all questions that he propounded to us, and he told us that it is his own decision that he waive the preliminary in this matter. Is that correct?

"By Mr. Williams: Yes.

"By Mr. Kennon: We told him it was his own decision; that if he wanted a preliminary in either case, we would be only too glad to represent him the best we could, but he tells us that he wants to waive.

"By the Court: Very well. In case #97987, let the record show that preliminary is waived and the defendant is bound over to the District Court for trial, to be held without bond.

"Now in case #98045, State versus Williams, charged with kidnapping. Let the record show as to the illness of the Public Defender and the appointment of Kennon and Leslie the same as in case #97987.

"Mr. Williams, is the appointment of these two gentlemen entirely satisfactory to you in this case?

"By Mr. Williams: Yes.

"By the Court: May I inquire as to whether or not you and Mr. Dickason had arrived at your decision to waive

the preliminary in this particular case also?

"By Mr. Williams: It was my decision.

"By the Court: It was your decision, after consulting with Mr. Dickason? Is that correct?

"By Mr. Williams: Yes.

"By the Court: And you have consulted with these two gentlemen on this second charge?

"By Mr. Williams: Yes.

"By the Court: Is there any question you would like to ask?

"By Mr. Williams: No, sir.

"By the Court: Have you advised with him in this case, Mr. Leslie?

"By Mr. Leslie: Yes, your Honor, we advised him fully.

"By the Court: Do both of you feel that he understands his rights and privileges?

"By Mr. Leslie: Yes, sir.

"By the Court: And that these acts are of his free and voluntary will?

"By Mr. Leslie: I am sure he understands; it is his own decision.

"By the Court: And do you hereby waive preliminary on the second charge?

"By Mr. Williams: Yes.

"By Mr. Kennon: For the record, the fact that you are waiving preliminary in the kidnapping case—is that your own decision?

"By Mr. Williams: It has been my decision on both cases.

"By the Court: Very well; preliminary is hereby waived, that being agreeable to the State?

"By Mr. Edmondson: Yes, Your Honor.

"By the Court: The defendant is bound over to the District Court for trial, to be held without bond."

Attached to the response is affidavit from Frank Leslie, one of the attorneys who represented defendant when his case came up for preliminary hearing. It reads:

"That on the 12th day of December, 1956, I was in a court room of Judge Lloyd McGuire on some legal matters. On this date Pete Williams came up for preliminary hearing and as the Public Defender was not present, Judge McGuire asked Troye Kennon, another lawyer, and myself if we would confer with Pete Williams concerning a preliminary hearing. The two of us went to the jury room in Judge McGuire's court room and discussed the matter with Williams. Mr. Williams was concerned only with beating the electric chair. He made some reference about hot-seat, or a hot-squat, and said that's what he wanted to beat. I told him that any examining magistrate in handling a preliminary hearing on a felony charge had to determine two questions. One, whether or not a crime had been committed, and second, whether there was probable cause that the defendant committed the crime, and I told him that about the only reason I had ever conducted preliminary hearing was to find out how strong a case the state had.

"I further told him that in this case you already know what the state has and I told him that the result would be the same, that he would be bound over if he had a preliminary hearing or if he waived it. He asked what we thought of the outcome in District Court, and I told him that I didn't think a District Judge would give him the extreme penalty on a plea of guilty. I remember that we both told him that that would be up to the District Judge.

"After a discussion of some several minutes, he then stated in positive terms that he wanted to waive a preliminary hearing and we returned to the court room and advised Judge McGuire to that effect."

Attached to the response is an affidavit of Robert D. Simms, then assistant county

attorney of Tulsa County, in which he states that on November 21, 1956 in company with Joe Madison, undersheriff and Ray Pruitt, deputy, he drove from Tulsa to the State Penitentiary at McAlester where the undersheriff received custody of Edward Leon Williams from the Warden, and that en route to Tulsa, Williams inquired of affiant on at least three occasions if he could make a deal on the kidnapping charge pending against him in Tulsa County. He wanted to know whether or not if he would enter a plea of guilty, the county attorney would recommend a life sentence. Mr. Simms swears that he told Williams each time that no deal could be made and that if the court requested a recommendation from affiant in case Williams did enter a plea of guilty, affiant would recommend the maximum sentence, and that such would be the attitude of the county attorney.

Mr. Simms further states:

" * * * that Williams told affiant he doubted if he could beat the rap before a jury and that he, Williams, knew if a jury assessed the death penalty it would be harder to have the sentence commuted than if a Judge gave it to him, for he had done some checking and that there had been either eleven or seventeen men assessed the death penalty on the plea of guilty and the court had commuted all; that affiant told Williams affiant did not believe this to be the case, but Williams told affiant he had checked and had had others check and knew this was correct. Williams told affiant in detail of the kidnapping and killing of Cooke, but that he had the state beat in the kidnapping case on the question of venue; affiant told Williams to go ahead and assert that defense if he wanted to, but he thought we had him blocked in it and in any event, venue was a question of fact for the jury; Williams told affiant he could do life standing on his head but that 'I don't want to die. That's the only thing that would be punishment to me'; affiant told Williams he should have thought of that when he kidnapped and later killed Cooke; Williams told affiant that he figured he was going to get the 'hot seat' anyway and he might as well go ahead and plead guilty and save the state the expense of a trial.

"That on the same afternoon of November 21, 1956, the case was called for arraignment before the Honorable Paul A. Walker, Jr., Judge of the Court of Common Pleas in and for Tulsa County, State of Oklahoma; that defendant was present in open court but not immediately represented by counsel; that Mr. Finis Smith, an attorney admitted to practice law in the State of Oklahoma, was asked by the court to appear for Williams for the purpose of arraignment only, that Williams at this time tried to enter a plea of guilty to both charges before Judge Walker; that Judge Walker would not accept the tendered plea of guilty by Williams and Judge Walker at the request of attorney Smith, passed the arraignment to November 23, 1956, the same being a Friday; that on November 23, 1956 the case was again called for arraignment, at which time the defendant, Williams, was present in open court and represented by counsel, Quinn Dickason, the Public Defender in Tulsa County, Okla.; that on November 21, 1956, affiant personally handed to Edward Leon Williams a copy of the information charging him with the offense of kidnapping, and that the information was read in open court to the defendant; that on November 23, 1956, the information was again read in open court; the defendant was advised fully of his rights by Judge Walker; a plea of not guilty was entered in behalf of Williams and the case ordered set for preliminary hearing on December 11, 1956. On November 26, 1956, the defendant was again brought into open court at the request of affiant and he was again represented by his counsel, Quinn Dickason; that

by reason of the fact November 23 had been declared a holiday and that the court house was not open generally to the public, but only to lawyers who had cases set before the court, affiant insisted that the defendant again be arraigned; that again on November 26, the defendant was fully advised of his rights as to preliminary hearing and defendant again entered a plea of not guilty and the case was then ordered set for preliminary hearing on December 11, 1956; that on December 12, 1956, the defendant appeared before the Honorable Lloyd H. McGuire, the Judge of the Court of Common Pleas, Tulsa County, and because of the illness of Quinn Dickason, the court relieved Dickason of his duties in the case and appointed Frank Leslie and Troye Kennon, who are duly licensed and practicing attorneys in the city of Tulsa, to confer with Edward Leon Williams; that affiant witnessed attorneys Leslie and Kennon go into the jury room adjoining Judge McGuire's court room, where they conferred with Williams for approximately twenty-five to thirty minutes, after which it was announced on Williams' behalf that Williams would waive preliminary hearing on both charges; that affiant distinctly remembers Judge McGuire inquired of Williams if this was his decision and Williams replied in the affirmative; that thereafter on the 19th day of December, 1956, the case of State of Oklahoma vs. Edward Leon Williams, No. 16910 came on for arraignment in the district court of Tulsa County; that affiant was present at the time of this arraignment; the State was represented by the then County Attorney and Williams appeared in open court without counsel. Whereupon, Lewis C. Johnson, the District Judge in and for Tulsa County, State of Oklahoma, assigned Fred Woodson to represent the defendant; that the information was read in open court to the defendant and that he was furnished a copy of the District Court information charging him with kidnapping; that affiant distinctly remembers Fred Woodson reading a copy of the information and that at the close or that after he had read same, Woodson made specific request of the court reserving the right to plead further to said information; that affiant has no knowledge of any statements or representations made to Williams or to any of his attorneys of record that he would in fact receive a life sentence if he plead guilty to the charge of kidnapping.

"Further affiant sayeth naught."

Also attached to response is affidavit from Deputy Sheriff Ray Pruitt. He says:

"That I was present in the car with Robert D. Simms and Joe Madison the day that Williams was returned to Tulsa County for arraignment. After leaving McAlester, en route to Tulsa, Williams and I had conversation in regards to the kidnapping, and he admitted that he had kidnapped Tommy Cooke in Tulsa and killed him in Muskogee County. He also stated that he was going to waive preliminary hearing and that he was expecting to get the 'hot seat', or electric chair, but indicated that there wasn't anything he could do about it. He said that he was guilty of it and he knew he was guilty and wasn't any use of putting the State to the cost of prosecuting him. On returning him to McAlester, after the arraignment, there was more conversation about the breaking of jail and being recaptured, and talked about his home in the vicinity of 61st and Peoria, as we were leaving. The rest of the trip was mostly conversation about the country, weather, and so forth.

"Further affiant sayeth naught."

The stenographic report of what was said and done at the time petitioner here changed his plea from that of "not guilty" to "guilty" in the district court of Tulsa County, Judge

Leslie Webb, presiding, is.set out in part in the writer's concurring opinion on rehearing in Williams v. State, Okl.Cr., 321 P.2d 990, 1004, at pages 1003–1008. Judge Webb specifically asked petitioner whether or not any one had made representations to him as to the sentence he might expect from the court, and Mr. Williams answered:

" 'I was told that I could expect the maximum.

" 'The Court: Of death in the electric chair?

" 'Mr. Williams: Yes, sir.

" 'The Court: In light of that representation made to you by your counsel, you wish to withdraw your plea of not guilty and enter a plea of guilty to the charge?

" 'Mr. Williams: Yes, sir.' "

Mr. Woodson, his attorney, did not take issue, or thereafter in motion for new trial assert that his client had been misled by the authorities or others into changing his plea of "not guilty" to "guilty". The record refutes any such idea. While as we write this opinion there has not been filed an affidavit from Mr. Woodson claiming that he was misled by the judge into believing that his client would receive a life sentence, surely if such was a fact he would have supported his motion for new trial with an affidavit to that effect, and would have raised the point in appeal to this Court. As we view the matter, an affidavit contrary to the record would be insufficient to overturn the record. It will be noted from Williams v. State, supra, that on appeal to this Court Williams was represented by John A. Ladner, Jr., and Fred W. Woodson of Tulsa, and Paul Gotcher of Muskogee. From the vigorous way they handled the appeal and obtained a rehearing by this Court, the effort to disprove the record would have been made on appeal, if there was foundation, rather than at this late hour after the appeal has been processed.

Since drafting this opinion, we received on June 23, 1959, an affidavit from Mr. John A. Ladner, Jr., in which he states that prior to plea he and Mr. Woodson discussed the Williams case with Judge Webb, and that Judge Webb said, in substance that he did not know too much about the facts in the Williams kidnapping case at that point, but that he had never in his years on the bench given the death penalty, and from what he knew of this kidnapping case he did not feel that it warranted the death penalty. Further, he stated: "Judge Webb did not make any actual definite promise nor actual definite agreement to the effect that he would not give the death penalty."

Of course it would have been highly improper for a judge to make any agreement in chambers with defense counsel in the absence of the county attorney, and without the benefit of a statement from the county attorney of what he would be able to prove. And customarily, a recommendation is requested from the county attorney. And the proper place for this is in the court room with court properly in session, and the reporter taking down the proceedings. That was done, as the record in Williams v. State, supra, shows. Mr. Ladner states that Mr. Woodson requested him to file the motion for new trial, which he did. If he thought Williams had been misled by any off-the-record remarks made to him and Woodson by the Court it was his duty to have called the matter to the attention of Judge Webb at the time of sentencing or in the motion for new trial, so a complete record could have been made. Evidently no significance was attached to any remarks of the trial judge having misled counsel or their client or such would have been timely urged.

Petitioner started his criminal career as a juvenile, and had served in a Federal reformatory, as had been brought out at the time he entered his plea of guilty. So he was not without experience in the court room. He felt that he knew what a jury would do. He would rather take a chance with a judge. He had been successful before by reason of the Muskogee Court, where petitioner was charged with murder, being under the impression that he could not assess the death penalty on a plea of guilty. The county attorney did not cor-

rect that court, nor did any other attorney present. Petitioner was taking a chance. At all events, as heretofore stated, the stenographic record made at the time petitioner changed his plea from not guilty to guilty, shows that the court particularly questioned petitioner as to any promises that anyone had made, and Williams said that he was advised that he might expect the maximum penalty.

It is our view that where a convicted person has appealed and his appeal has been determined adversely to him, he may not in a habeas corpus action retry the issues or other fact questions that he might have raised in the lower court. As stated in 21 C.J.S. Courts § 237:

"Records of a court constitute evidence of its official acts and import verity."

In In re Coyle, 4 Okl.Cr. 133, 111 P. 666, this Court held:

"The orders and judgments of a court of record which appear to be properly entered cannot be impeached or contradicted in habeas corpus proceeding."

It is our conclusion that such principle is equally applicable to the official stenographic record of the conversation between the court and the prisoner and counsel at the time of defendant's entry of a plea of guilty, and at time of his subsequent sentencing.

In State v. Murphy, 68 Mont. 427, 219 P. 629, the court adopted in paragraph 3 of the syllabus a principle of law from 15 C.J. § 404, p. 979; 21 C.J.S. Courts § 237, p. 442, which we think applicable to this case, where it is said:

"The records of the proceedings of a court of record made and kept pursuant to law constitute the legal evidence of its judgments, orders, and other proceedings, importing absolute verity, unless and until reversed or set aside, and cannot be contradicted within the jurisdiction of the court, nor are they subject to collateral attack."

The court in the body of the opinion said:

"The reason for this rule is so palpably conducive to order in the conduct and recording of judicial acts as to need no argument in its behalf."

We must conclude that the record in the court of the examining magistrate positively shows that petitioner waived a preliminary hearing; that the record made in the district court of Tulsa County at the time petitioner changed his plea from "not guilty" to "guilty" shows that petitioner well knew that he might receive the maximum sentence of death in the electric chair, and that he denied that anyone had represented to him otherwise. And while there is evidence that petitioner was served with a list of witnesses to be used by the State at least twenty-four hours prior to arraignment, and was served with a copy of the information, it is undisputed that petitioner entered a plea without raising such issue and thereby waived such right, if in fact the list of witnesses and information were not aptly furnished. Coppage v. State, 62 Okl.Cr. 325, 71 P.2d 509; Daniels v. State, 55 Okl.Cr. 298, 29 P.2d 997; Ex parte Pruitt, 89 Okl.Cr. 312, 207 P.2d 337; Stouse v. State, 6 Okl.Cr. 415, 119 P. 271; Blagg v. State, 36 Okl.Cr. 337, 254 P. 506; Miles v. State, Okl.Cr. 268 P.2d 290; Ex parte Gray, 74 Okl.Cr. 200, 124 P.2d 430; State v. Frisbee, 8 Okl.Cr. 406, 127 P. 1091; Van Brunt v. State, 62 Okl.Cr. 188, 70 P.2d 1103.

The petition is insufficient to confer jurisdiction on this Court for the purpose of granting relief.

Writ Denied.

BRETT, J., concurs.

NIX, J., dissents.